JUDITH ANN HOLTHAUS, Appellant, *v.* THE INDUSTRIAL COMMISSION *et al.* (The City of Pana *et al.*, Appellees).

Fifth District (Industrial Commission Division)   No. 5—84—0100WC

Opinion filed August 1, 1984.—Rehearing denied September 21, 1984.

Robert W. McCarthy, of Baird, Latendresse, McCarthy & Rowden, of

Decatur, for appellant.

Heyl, Royster, Voelker & Allen, of Springfield (John A. Ess, of counsel), for appellees City of Pana and Commercial Union Assurance Company.

JUSTICE KASSERMAN delivered the opinion of the court:

Petitioner, Judith Ann Holthaus, filed an application for adjustment of her claim under the Workers' Compensation Act (Ill. Rev. Stat. 1979, ch. 48, par. 138.1 *et seq.*) for gunshot injuries suffered while she was employed by the respondent City of Pana (Pana). An arbitrator, denying benefits, found that Holthaus had not proved that her injuries arose out of and in the course of her employment. In a split decision, the Industrial Commission confirmed the decision of the arbitrator and adopted the arbitrator's findings as the findings of the Commission. One commissioner filed a written dissent. The circuit court of Christian County confirmed the decision of the Commission. This appeal followed.

The facts are not in dispute. Holthaus was employed by Pana as a swimming pool manager at Kitchell Park, a 40-acre park bounded by residential and agricultural areas, a golf course, and U.S. Route 51. The park includes tennis courts, a baseball diamond, amphitheater, pavilion, playground, and parking. One parking lot was adjacent to the building area serving the fenced-in swimming pool.

Holthaus' responsibility was to do whatever was necessary to have the pool ready to use on June 2, 1980. She began pumping out water on April 28 and was frequently required to clean the sides of the pool. How and when the work was to be done was left up to Holthaus. At 6 p.m. on May 2, 1980, the date and time she was injured, Holthaus was working alone at the pool and her personal automobile was the only vehicle parked in the pool parking lot.

At that time, Perry Hubbart, an escaped convict, approached and engaged in conversation with Holthaus, then walked toward the pool parking lot. Hubbart returned and asked Holthaus whether the car in the lot was hers. When Holthaus said that it was, Hubbart attempted to shove her into the pool building. She struck him with part of a lighting fixture and ran toward her car. Hubbart shot twice, wounding her. Holthaus then hid behind her car. Another car arrived, and Holthaus told the driver of the car what had happened. The driver then approached the pool building and was shot down by Hubbart, who had found a set of keys and was headed toward the parking lot. Holthaus and the passenger of the second car fled in the car of the driver Hubbart had shot. Hubbart, unable to start Holthaus' car with the keys he

had found, shot at another arriving car and then went to the south side of the park, where he forced two persons to accompany him as he escaped in their truck.

After Hubbart was arrested, he gave both oral and written statements. According to an officer who testified before the arbitrator, Hubbart stated in the oral statement that he had kidnaped a woman in Decatur and forced her at gunpoint to drive him to Pana, where he let her out near a Pana school; that he proceeded from the school area around Pana in an effort to try to find another automobile to steal to get away; and that after he shot Holthaus, he ran toward the south edge of the park where, he abducted two people in their vehicle at gunpoint.

In Hubbart's written statement, he related that after getting out of the car of the woman he had abducted in Decatur, he then walked around Pana looking for another car; that he stopped at Reban's Cafe and had something to eat at 6 p.m.; and that he then walked around looking for a car and finally ended up at the park. He stated that he saw a girl working at the swimming pool and asked her if that was her car sitting in front and she said that it was. In his written statement, Hubbart also stated that he started to pull his gun out when the lady hit him with something and started to run; that he then started shooting at her; and then he went back to the door to get her car keys and then headed for her car. According to Hubbart's written statement, a man then ran around the corner of the building and Hubbart shot him, and Hubbart then got in the car but could not get the key to fit. Hubbart stated that he got out of the car and took off running for the "southside [*sic*] of the park" and forced his way into a black pickup truck and drove away.

Holthaus testified before the arbitrator that her duties at the pool included protecting the property and preventing illegal entry of the premises and damage thereto. During the summer of 1979 she had called the police when drunks came to the pool area, and, on another occasion, a stabbing victim had come to the pool and she had given first aid and called the police.

Holthaus further testified that an assistant manager, lifeguards and cleaning personnel worked under her at times set by her. She further testified that the committee she worked for had instructed her to call the Pana police in the event of trouble.

■■■ It is well settled that the issue of causal connection is a question for the determination of the Commission, and the Commission's decision thereon will not be set aside on review unless it was contrary to the manifest weight of the evidence. (*Certi-Serve, Inc. v.*

*Industrial Com.* (1984), 101 Ill. 2d 236, 244, 461 N.E.2d 954, 958.) It is the claimant's burden to establish that her injuries arose out of and in the course of her employment. This court will not disregard or reject permissible inferences drawn by the Commission merely because other inferences might be drawn, nor will we substitute our judgment for that of the Commission unless its findings are against the manifest weight of the evidence. (*Castaneda v. Industrial Com.* (1983), 97 Ill. 2d 338, 341, 454 N.E.2d 632, 634.) An injury may be said to arise out of the employment when, upon consideration of all of the circumstances, there is apparent to the rational mind a causal connection between the conditions under which the work is performed and the resulting injury; and that an injury occurs at the place of employment is not sufficient in itself to prove that the injury arose out of the employment. 97 Ill. 2d 338, 341-42, 454 N.E.2d 632, 634.

■ Holthaus contends that the Commission's finding that she did not prove that her injuries arose out of her employment was contrary to the manifest weight of the evidence. We agree. We conclude that Holthaus established that, under the circumstances, the site at which she was required to work created an enhanced risk of criminal assault. Consideration of the evidence adduced requires the conclusion that the pool area of Kitchell Park was isolated to a significant extent compared to the rest of the community at the time of year (midspring) when the assault took place. The pool being closed, the public had no occasion to visit the pool area, as is also shown by the fact that Holthaus' car was the only one in the parking lot. It may be said that Hubbart might have happened upon a member of the general public at that location, as he did shortly after shooting Holthaus. However, the facts remain that the general public was neither required to be there nor had reason to be there, and Holthaus' employment caused her to be there at various times and frequently alone. See *Allied Manufacturing, Inc. v. Department of Industry, Labor & Human Relations* (1970), 45 Wis. 2d 563, 568, 173 N.W.2d 690, 692 (holding that the isolated environment in which the deceased worked constituted a "zone of special danger" and concluding that the decedent's death arose out of her employment); 1 A. Larson, Workmen's Compensation sec. 11.11(b), at 3-146 (1982) (recognizing the work-related risk factor inherent in the circumstances of an employee who is required to work at an isolated location).

Our conclusion is strengthened by consideration of why Hubbart did not try to take the car of some other individual earlier somewhere else in Pana, instead of making his first such attempt at the pool in Kitchell Park. Furthermore, why did he not force someone to give up

a car at gunpoint when he was at Reban's Cafe or make such an attempt at a private residence? The answer is that none of these locations provided the right opportunity to Hubbart's satisfaction, *i.e.*, a car, keys or a person from whom keys could be acquired with relative ease, and a setting in which minimal attention would be attracted. In May, people may be expected to be out of doors, windows are open, and loud noises may attract considerable attention. At the pool, however, Hubbart found a lone woman who had a car, who probably had the car keys, and who was relatively far from those who might hear and come to her assistance.

Respondent urges that the conclusion that the pool is an area of enhanced risk of assault under the circumstances is at odds with the fact that other people who were not engaged in any employment at the time were also assaulted or kidnaped immediately after Holthaus was shot. This fact does not alter our conclusion, however. Those people were assaulted or kidnaped because Hubbart's first attempt to obtain a car, made against someone he perceived to be particularly vulnerable, had failed and considerable attention had been attracted in the process. The failure of the first attempt, against Holthaus, and the consequent commotion significantly raised the risk of Hubbart's imminent apprehension and forced him to take bolder steps to obtain a car. Had the attempt involving Holthaus succeeded, Hubbart would have had no reason to assault anyone else.

■ We reject respondent's contention that Kitchell Park is a recreation area not unlike hundreds of others in Illinois regarding its setting and surroundings. While it is true that Holthaus did not prove that the Kitchell Park pool area at the time of the assault was isolated compared to other municipal parks or other pools being worked on prior to being opened to the public, we find this to be a misleading comparison. Not every city employee is required to work alone in a municipal park; not everyone who is at a municipal park is required to be there, frequently alone. The appropriate requirement for compensation is that one's employment subjects him to an increased risk "beyond that to which the general public is subjected." *Campbell "66" Express, Inc. v. Industrial Com.* (1980), 83 Ill. 2d 353, 355, 415 N.E.2d 1043, 1044.

■ Finally, it is of no consequence that the attack apparently was related to Holthaus' car and unrelated to any of respondent's property, although Holthaus was required to use her personal car as a part of her employment. A claimant need not establish that the environment increased the risk of attack and also that the attack was motivated by something related to claimant's employment. Proof of either

one or the other suffices to establish the requisite causal link. 1 A. Larson, Workmen's Compensation sec. 11.11(b), at 3—145 (1982).

For the foregoing reasons, we conclude that Holthaus has established that her injuries arose out of her employment and that the decision of the Commission to the contrary was against the manifest weight of the evidence. Therefore, the judgment of the circuit court of Christian County is reversed and this cause is remanded to the Industrial Commission for further proceedings consistent with the views expressed herein.

Reversed and remanded.

SEIDENFELD, P.J., BARRY, McNAMARA, and WEBBER, JJ., concur.