THOMAS R. BRADY, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Louis Ruffolo & Sons Construction Company, Appellee).

Third District (Industrial Commission Division) No. 3—88—0461WC

Opinion filed November 28, 1989.—Rehearing denied January 18, 1990.

BARRY, P.J., dissenting.
WOODWARD, J., concurs in the dissent.

Richard D. Hannigan, of Hannigan & Hannigan, of Mundelein, for appellant.

Jerry Sweeney, of Sweeney & Riman, of Chicago, for appellee.

Neil F. Hartigan, Attorney General, of Springfield, *amicus curiae.*

JUSTICE LEWIS delivered the opinion of the court:
The claimant, Thomas Brady, claimed benefits under the Workers' Compensation Act (Ill. Rev. Stat. 1987, ch. 48, par. 138.1 *et seq.*)

(hereafter referred to as the Act) for injuries received while he was employed by the respondent Louis Ruffolo & Sons Construction Company. Following a hearing pursuant to section 19(b—1) (Ill. Rev. Stat. 1987, ch. 48, par. 138.19(b—1)) of the Act, the arbitrator denied his claim, finding that he had failed to prove he had sustained accidental injuries arising out of his employment. In a split decision, the Illinois Industrial Commission (hereafter referred to as the Commission) affirmed the decision of the arbitrator, expressly adopting the arbitrator's findings as its own. Thereafter the circuit court of Will County confirmed the decision of the Commission. This appeal followed. The Attorney General of the State of Illinois has filed a brief as *amicus curiae* in support of the claimant's position.

On appeal the claimant presents three issues for review:

"I. Is the Industrial Commission decision, that the accident did not 'arise out of' Petitioner's employment, contrary to the undisputed facts and all permissable [*sic*] inferences drawn therefrom?

II. Is the holding, that the accident and injuries of Thomas R. Brady did not 'arise out of' his employment, a question of law which may be reconsidered by the Court without deference to the decision of the Industrial Commission?

III. Did the Petitioner prove by a preponderance of the evidence that he sustained accidental injuries on November 18, 1986 'arising out of' and in the course of his employment for the Respondent, Louis Ruffolo & Sons Construction Company?"

The claimant makes no argument specifically addressing the third issue he presents for review.

On November 18, 1986, the claimant was seriously injured when a truck loaded with gravel and weighing 71,220 pounds struck the respondents' building as claimant worked inside. After the truck had been struck by an automobile, its steering wheel "locked" and it crashed into that part of the building where the claimant worked as an "estimator engineer" for the respondent. At the time he was injured, claimant appears to have been working at or near a drafting table. As a consequence of the injury, the claimant's small and large bowel had to be removed.

At the hearing before the arbitrator the claimant testified that the building in which he worked was located on the west side of Route 53 in Bolingbrook, Illinois. His office was located in the northeast corner of the building, the exterior of which was constructed of a corrugated metal about one-eighth of an inch thick. The building served in part as the respondent's garage. The claimant's job was to

prepare bids and to maintain "job costs as they progressed." A drafting table 42 inches high was attached to the south wall of his office. When claimant was standing, the table reached, he said, "just below the stomach" at the bottom of his rib cage. His job required him to work at the drafting table. His "last recollection" prior to being injured at about 10:15 a.m. was "working with the set of plans at the drafting table." He next became conscious while lying on his back in the parking lot north of the building.

The claimant described Route 53 as "a designated truck route." He indicated, however, that he had never seen a sign on Route 53 with any such designation. In front of the respondent's building, Route 53 is a four-lane highway divided by a median. Route 53 curves as it passes the respondent's building. Approximately three quarries are located in the area. Gravel trucks traveling south on Route 53 past the claimant's workplace are empty; gravel trucks traveling north at that location are full. Asked to describe the kind of vehicles that traveled in front of the place where he worked, claimant responded, "Well, the early morning and late afternoon commuters, the automobiles and all day long the gravel trucks were quite high frequency. Both loaded and empty."

The claimant called as a witness Louis Ruffolo, Jr., who together with his father employed the claimant. Following the impact the witness had found the claimant lying outside the building. The respondent has been in business at that location since 1971, when the building was erected. At that time Route 53 was a two-lane highway. In approximately 1984 or 1985, Route 53 was widened to four lanes. Upon the widening of the highway, the north-south grade of the road was altered so that there is a 30-degree slope from the highway toward the respondent's building. The elevation of Route 53 is about 2½ feet higher than the entrance to the respondents' building. The witness described traffic at rush hour as "heavy" and during the day as "medium."

The claimant called as another witness Jeffrey Scott Williams, who is by occupation a "model maker" for purposes of litigation. He had prepared a drawing of the area where the incident occurred, admitted as respondent's exhibit No. 1. He testified that the distance between the west edge of Route 53 to the east door of the respondent's building is 47 feet; the distance between the west edge of the northbound lanes of Route 53 and the east edge of the respondent's building is 86 feet. The distance to Route 53 from the only other building shown on the drawing is 88 feet. As one travels north on Route 53 in the vicinity of the respondent's building, Route 53 curves

from west to east.

The claimant called as his final witness Drew Peterson, a police officer for the Village of Bolingbrook, who responded to the call pertaining to this incident. He testified that on the day in question it was snowing and roads were icy and "extremely hazardous." As an automobile traveling south on Route 53 was passing the respondent's building, the driver, approaching the incline there, shifted to a lower gear to afford more power to his car. When he accelerated, his vehicle spun out of control, crossed the median, and struck the cab of a northbound "semi Mack Truck," fully loaded and traveling at about 40 miles per hour. The truck crossed the median, both lanes of southbound traffic, and a ditch before striking respondent's building. The witness described the curve of the highway near respondent's building as "gradual, it would not be extreme." There are, he said, no weight limitations for vehicles traveling on Route 53, which he described as "the main artery." Route 53 in that area has "some residences on it but primarily it's a commercial type roadway"; the area in front of the respondent's building is heavily traveled by trucks. The witness was unaware of any signs on Route 53 designating it as a truck route. Without a special permit, however, the loaded truck could not have been driven on the residential streets of the area; given its weight, it would have been permitted to travel on two other streets within a mile of the respondent's building. The car and truck collided about 275 feet south of the respondent's building. The officer found the claimant lying faceup in debris north of the building.

The respondent called as a witness Bruce Nagel, the driver of the truck that struck the respondent's building. At the time of the incident he was transporting a load of gravel from a quarry in Plainfield, Illinois. He testified that the car struck his truck "in the front end and steering axle." After the impact between car and truck, the steering wheel of the truck was unable to be turned at all and was "locked in position," veering slightly to the left.

In his decision the arbitrator found:

> "There is no dispute that Petitioner, at the time of the accident, was in the course of his employment with Respondent. Petitioner, as an estimating engineer was at his place of employment in a corrugated metal building; the building being 47 feet from a heavily-traveled roadway, Highway 53.
>
> The central issue is whether this injury to the Petitioner can be said to arise out of the employment; specifically whether the circumstances of Petitioner's employment amounted to subjecting Petitioner to an increased risk beyond that to which the

general public is subjected. It is the Arbitrator's conclusion that the circumstances of Petitioner's employment here did not place him in an 'increased risk beyond that to which the general public is subjected.'

\* \* \*

In a sense the environment of the employment; that is, the location of Petitioner's work place and its adjacency to the heavily traveled roadway was only incidental in the chain of circumstances that caused Petitioner's injury. It was not—in this case—that because of the proximity of the building to the roadway—and being located on a curve—or the grade descending to the building—that Petitioner suffered injury. As Respondent has pointed out, the vehicular accident that precipitated this tragic chain of events took place more than 350 feet south, beyond the building's location. The Arbitrator concludes that the 'environment' of the employment was not a contributing factor to Petitioner's injury; the 'but-for' aspect notwithstanding. Since the environment of the employment did not create an 'increased risk,['] the accident, in the opinion of the Arbitrator, cannot be held to have arisen out of the employment by the Respondent."

Accordingly, the arbitrator denied the claim for compensation.

Upon review the Commission affirmed the decision of the arbitrator, finding as follows:

"1. On November 18, 1986, Petitioner, a 34 year old estimating engineer, was critically injured when a gravel-bearing truck was struck by another vehicle, causing it to jump a median, cross a ditch and crash into Petitioner's place of employment, a corrugated metal building 47 feet from the highway. Petitioner was hurled into the building parking lot by the impact and sustained serious abdominal injuries.

2. The Arbitrator saw the Petitioner, heard all the testimony, considered all the evidence, and made findings (attached) which are supported by evidence in the record and which the Commission hereby adopts."

The Commission concluded on the basis of these findings that it had "no reason to change the Decision of the Arbitrator."

Commissioner Black dissented in an opinion in which he stated:

"The majority's conclusion that Petitioner was not exposed to an increased risk beyond that to which the general public is subjected is not consistent with the facts as presented on Arbitration. Respondent constructed the building in question in

1971. At that time it was constructed of corrugated metal on what was then a two lane highway. In approximately 1984, the highway was widened to four lanes and the grade of the road was changed. After reconstruction of the highway, the road was 47 feet from where Petitioner was required to sit eight hours a day. The highway, Route 53, was designated for commercial traffic and there were only two other roads in the general area over which the 71,000 pound gravel truck which came from a nearby quarry and which ultimately caused Petitioner's injury, could travel. Thus, the conditions of Petitioner's employment whereby he was required to work in close proximity to a highway heavily used by commercial traffic, exposed him to the risk of injury beyond that to which the general public was exposed. While any member of the general public could be injured in a vehicular accident, Petitioner's work environment enhanced the risk of such an occurrence."

In confirming the decision of the Commission the circuit court noted that "[i]t is well settled Illinois law that to come within the Statute, the employee must prove that some act or phase of his employment was a causative factor in the ensuing injury. It is also well settled Illinois law that the 'positional risk' doctrine is not accepted in Illinois." The circuit court determined, "[b]ased on the Law which is applicable, and based upon the facts which were presented to the Commission, the Court is unable to conclude that the Decision is either contrary to Law or against the manifest weight of the evidence."

With respect to the first issue he raises, claimant maintains that the decision of the Commission that his injuries did not arise out of his employment is contrary to the undisputed facts and all permissible inferences drawn therefrom. He contends essentially that by virtue of having to spend his working time "on the apex of a curve" in a building only 47 feet from a heavily traveled commercial route serving three quarries he was exposed to a risk greater than that to which the general public was exposed; the employer takes the contrary position. With regard to the second issue he presents for review, he argues that where there is no dispute as to the facts but a dispute only "as to whether the testimony shows an employee suffered an accidental injury entitling him to compensation," the question becomes one of law and the appellate court has the power to examine the facts and determine whether, as a matter of law, the facts are sufficient to show an accidental injury. Because these two issues are essentially interrelated, we consider them together. By failing to mention at all in the body of the argument the third issue he raises, claimant has effec-

tively waived it for review under Supreme Court Rule 341(e)(7) (113 Ill. 2d R. 341(e)(7)). (*Jenkins v. Wu* (1984), 102 Ill. 2d 468, 468 N.E.2d 1162.) Therefore, we do not address this issue; however, in view of the disposition we make, waiver of this issue had no effect upon the outcome of claimant's appeal.

 To be the basis of an award an injury must "arise out of" and "in the course of" employment. (*Union Starch, Division of Miles Laboratories, Inc. v. Industrial Comm'n* (1974), 56 Ill. 2d 272, 307 N.E.2d 118.) The dual requirements for compensability under the Act (Ill. Rev. Stat., ch. 48, par. 138.2) have been defined many times. (*Scheffler Greenhouses, Inc. v. Industrial Comm'n* (1977), 66 Ill. 2d 361, 362 N.E.2d 325.) The phrase "in the course of" relates to the time, place, and circumstances of the injury; an injury is received in the course of employment where it occurs within a period of employment, at a place where the worker may reasonably be in the performance of his duties, and while he is fulfilling those duties or engaged in something incidental thereto. (*Scheffler Greehouses*, 66 Ill. 2d 361, 362 N.E.2d 325.) An injury that "arises out of" a person's employment may be defined as one which has its origin in some risk connected with or incidental to the employment so that there is a causal connection between the employment and the accidental injury. (*Material Service Corp., Division of General Dynamics v. Industrial Comm'n* (1973), 53 Ill. 2d 429, 292 N.E.2d 367.) Conversely, if the injury is caused by something unrelated to the nature of the employment or is not fairly traceable to the environment of the employment as a contributing proximate cause, but results instead from a hazard to which the employee would have been equally exposed apart from the employment, the injury does not arise out of the employment. (*Material Service Corp.*, 53 Ill. 2d 429, 292 N.E.2d 367.) Although the general public is exposed to the risk, if the employee by reason of his employment is exposed to the same risk to a greater degree, the accident is said to arise out of the employment. (*C.A. Dunham Co. v. Industrial Comm'n* (1959), 16 Ill. 2d 102, 156 N.E.2d 560.) Where there has been evidence that the conditions or nature of the employment increased the risk of injury beyond that to which the general public was exposed, courts have held a finding that the injury arose out of the employment not to be against the manifest weight of the evidence. (*Campbell "66" Express, Inc. v. Industrial Comm'n* (1980), 83 Ill. 2d 353, 415 N.E.2d 1043.) This same rationale has been applied both in cases where recovery has been sustained and in cases where it has been denied, the crucial difference being found in the peculiar facts of each case. *Campbell "66" Express*, 83 Ill. 2d 353, 415 N.E.2d 1043.

■ An injury may be said to arise out of the employment when, upon consideration of all the circumstances, there is apparent to the rational mind a causal connection between the conditions under which the work is required to be performed and the resulting injury. (*Illinois Country Club, Inc. v. Industrial Comm'n* (1944), 387 Ill. 484, 56 N.E.2d 786; *Holthaus v. Industrial Comm'n* (1984), 127 Ill. App. 3d 732, 469 N.E.2d 237.) The mere fact that an employee was present at the place of injury because of his employment will not suffice unless the injury itself is a result of some risk of the employment. (*Illinois Country Club, Inc.*, 387 Ill. 484, 56 N.E.2d 786.) The State of Illinois has not adopted the "positional risk" doctrine but, instead, adheres to the general requirement that one's employment must subject one to an increased risk beyond that to which the general public is subjected. (*Campbell "66" Express*, 83 Ill. 2d 353, 415 N.E.2d 1043; *Decatur-Macon County Fair Association v. Industrial Comm'n* (1977), 69 Ill. 2d 262, 371 N.E.2d 597.) The burden of proof is upon the claimant to show that the employee's position was more hazardous than that of others in the same community or that by reason of the employment the risk was greater. *J.I. Case Co. v. Industrial Comm'n* (1966), 36 Ill. 2d 386, 223 N.E.2d 847; *Holthaus*, 127 Ill. App. 3d 732, 469 N.E.2d 237.

■ A question of law is presented if there is no dispute pertaining to factual matters and no conflicting inferences can be drawn therefrom. (*Schroeter v. Industrial Comm'n* (1976), 62 Ill. 2d 284, 342 N.E.2d 3.) If undisputed facts upon any issue permit more than one reasonable inference to be drawn therefrom, the determination of such issue presents a question of fact (*Union Starch*, 56 Ill. 2d 272, 307 N.E.2d 118), and the conclusion of the Commission will not be disturbed on review unless it is contrary to the manifest weight of the evidence (*Sears, Roebuck & Co. v. Industrial Comm'n* (1979), 78 Ill. 2d 231, 399 N.E.2d 594); if the undisputed facts are susceptible of but a single inference, then the issue becomes one of law, to be determined by the court upon review (*Union Starch*, 56 Ill. 2d 272, 307 N.E.2d 118), and the decision of the Commission is not binding upon the court of review (*Osborn v. Industrial Comm'n* (1971), 50 Ill. 2d 150, 277 N.E.2d 833). A court of review may not, however, disregard, discard, or reject a permissible inference drawn by the Commission merely because it might reasonably draw another inference from the same facts. (*Greene v. Industrial Comm'n* (1981), 87 Ill. 2d 1, 428 N.E.2d 476; *Schroeter*, 62 Ill. 2d 284, 342 N.E.2d 3; *Holthaus*, 127 Ill. App. 3d 732, 469 N.E.2d 237.) A court may not substitute its judgment for that of the Commission unless, as has been said, its findings are contrary to the manifest weight of the evidence. *Schroeter*, 62 Ill. 2d 284, 342

N.E.2d 3; *Holthaus*, 127 Ill. App. 3d 732, 469 N.E.2d 237.

The parties have cited and our research has disclosed no case in Illinois involving injury to an employee as the result of a motor vehicle's having struck a building in which the employee was working. The respondent employer cites and discusses *Lathrop v. Tobin-Hamilton Shoe Manufacturing Co.* (Mo. App. 1966), 402 S.W.2d 16, in which a driverless, runaway automobile crashed through a window of the shoe factory of the claimant's employer where she was engaged in her regular work. The employer contended that the "accident" did not arise out of the claimant's employment and was, therefore, not compensable. At a nearby filling station, the car had accidentally been put in gear and the accelerator depressed. The car went forward about 140 feet and crashed through the window where the employee was working. The court noted that Missouri courts had not accepted the "positional-risk theory, i.e., compensation on a mere showing that the victim's employment put him in the position where he was injured." (*Lathrop*, 402 S.W.2d at 21.) The claimant contended, *inter alia*, that her employment exposed her to an unusual risk of injury not shared by the general public and that her injury was a rational consequence of a hazard related to her employment in that she was required to work 10 feet from a large, "unguarded" (*Lathrop*, 402 S.W.2d at 22), glass window painted white, about 5½ inches above ground level and about 18 feet from an intersection of alleys. In affirming the Industrial Commission's denial of compensation, the court reasoned as follows:

> "It is true that, as claimant emphasizes, 'the general public' did not work *inside* the employer's shoe factory and, on that account, was not subject to the specific possibility of being struck by a driverless, runaway automobile after it had crashed through a window in the factory wall. But claimant was injured only when and because the automobile struck her, not by reason of any antecedent happenstance along its unguided and unpredictable course, such as that of the automobile having crashed through a window. And it cannot be gainsaid that members of the general public *outside* the factory, including those on foot and in vehicles who might have been using the nearby alleys, also were exposed to the hazard of being struck and thereby injured by this or some other driverless, runaway automobile. If it be conceded (for the purposes of this opinion) that *some* reasonable men might conclude that claimant's employment, which stationed her inside the factory at a point approximately twenty-eight feet from the nearest public way, exposed her to an unusual risk of injury from the agency here involved, i.e., from a

driverless, runaway automobile, which was not shared by the general public, and that her injury was a rational consequence of a hazard connected with her employment, we are convinced that *other* equally-reasonable men honestly could and undoubtedly would reach a contrary conclusion." (Emphasis in original.) (*Lathrop*, 402 S.W.2d at 22.)

The parties cite and our research has revealed no cases other than *Lathrop* from foreign jurisdictions involving injury to an employee by means of a motor vehicle as the employee worked inside a building.

The parties as well as the Attorney General of the State of Illinois as *amicus curiae* discuss and rely in part upon cases in which an employee while working has been injured by lightning or during a tornado or windstorm. (See *Campbell "66" Express, Inc.*, 83 Ill. 2d 353, 415 N.E.2d 1043; *Decatur-Macon County Fair Association*, 69 Ill. 2d 262, 371 N.E.2d 597; *J.I. Case Co.*, 36 Ill. 2d 386, 223 N.E.2d 847; *Eisner Food Stores v. Industrial Comm'n* (1965), 33 Ill. 2d 474, 211 N.E.2d 683; *Illinois Country Club, Inc.*, 387 Ill. 484, 56 N.E.2d 786; *Central Illinois Public Service Co. v. Industrial Comm'n* (1920), 291 Ill. 256, 126 N.E. 144; *Beecher Wholesale Greenhouse, Inc. v. Industrial Comm'n* (1988), 170 Ill. App. 3d 184, 524 N.E.2d 750.) Both claimant and *amicus curiae* rely upon *Campbell "66" Express, Inc.* (83 Ill. 2d 353, 415 N.E.2d 1043), in which the claimant was employed as a truck driver. During a tornado, while being restrained by his seat belt, he was injured by being thrown about violently in the tractor as the truck was hurled about 100 feet through the air. The sole issue for review was whether the claimant's injuries arose out of his employment. The supreme court held the decision of the Commission in favor of the claimant not to be against the manifest weight of the evidence, reasoning that the Commission could have concluded that the necessity for a truck driver to be on the highway at all times of the day and night in all kinds of weather subjected the claimant to a greater risk of injury from the tornado than that to which the general public in that vicinity was exposed.

The claimant relies heavily as well upon *Holthaus v. Industrial Comm'n* (1984), 127 Ill. App. 3d 732, 469 N.E.2d 237, which the arbitrator, likewise, discussed and quoted in his decision denying the instant claim for compensation. In *Holthaus*, the claimant was employed as a swimming pool manager at a park. A parking lot was adjacent to a building serving a fenced-in swimming pool. While working alone at the pool when her personal automobile was the only vehicle parked in the parking lot, an escaped convict shot and wounded her. The claimant's duties included protecting the property and preventing illegal en-

try of the premises and damage thereto. Upon review the court concluded that the claimant had established that her injuries arose out of her employment and that the decision of the Commission was contrary to the manifest weight of the evidence. The court concluded as well that the claimant had "established that, under the circumstances, the site at which she was required to work created an enhanced risk of criminal assault. *** [T]he facts remain that the general public was neither required to be there nor had reason to be there, and Holthaus' employment caused her to be there at various times and frequently alone." (*Holthaus*, 127 Ill. App. 3d at 736, 469 N.E.2d at 239.) Quoting *Campbell "66" Express, Inc.*, the court in *Holthaus* observed, "The appropriate requirement for compensation is that one's employment subjects him to an increased risk 'beyond that to which the general public is subjected.' " (*Holthaus*, 127 Ill. App. 3d at 737, 469 N.E.2d at 240.) The arbitrator in the instant case expressly concluded that "there is nothing in the evidence to show that the environment was such as to be 'an increased risk beyond that to which the general public is subjected.' "

■ In view of the facts of the instant case, we think reasonable men could conclude that members of the general public outside the respondent's garage were equally exposed to the hazard of being struck by the disabled truck. Although this court might have drawn from the facts of this case an inference conflicting with that drawn by the Commission, the Commission could reasonably have inferred that the conditions of the claimant's employment did not subject him to a risk of injury beyond that to which the general public was exposed. Having so inferred, the Commission properly concluded that his injuries did not arise out of his employment and could not be the basis of an award. Although the claimant asserts that the facts are undisputed, the respondent employer maintains that they are not. The employer questions, among other things, the claimant's statement in his brief that "because of the curve of the road, [following impact the truck] crossed the median on a diagonal and went into the Respondent's garage and through the office in which the Petitioner was working." However, even if the facts are deemed to be essentially undisputed, inasmuch as more than one reasonable inference may be drawn from them, the conclusion of the Commission may not be disturbed unless it is contrary to the manifest weight of the evidence. In light of all the evidence, including evidence that the conditions of the claimant's employment did not increase his risk of injury beyond that to which the general public in that vicinity was exposed, the conclusion of the Commission that the claimant's injuries did not arise out of his employment appears not to

be against the manifest weight of the evidence. Hence, the conclusion of the Commission may not be disturbed, and we accordingly affirm the judgment of the circuit court confirming the Commission's decision.

Affirmed.

McNAMARA and McCULLOUGH, JJ., concur.

JUSTICE BARRY, dissenting:
The majority is forced to rely heavily upon a Missouri decision because there are no reported Illinois cases involving injury to an employee occurring when the building in which the employee works is struck by a motor vehicle. I would suggest that the absence of Illinois decisions is not due to the rarity of such accidents, but rather is due to the payment of workers' compensation benefits for such injuries without dispute. Thus, the case of Thomas Brady is a most unusual one in Illinois.

I must dissent because the ultimate basis for the majority decision is that the ruling of the Illinois Industrial Commission is not contrary to the manifest weight of the evidence. I would reverse the judgment of the circuit court of Will County.

The majority admits that there are virtually no facts in dispute, and I am convinced that only one inference can be drawn from those facts: that the conditions of Brady's employment exposed him to a greater risk than the general public, as was found by dissenting Commissioner Black. Hence, the decision of the Industrial Commission was contrary to law, and the manifest weight of the evidence is not an issue.

It is a well-established rule that where the undisputed facts are susceptible of but a single inference, then the issue becomes one of law, to be determined by the reviewing court. (*Union Starch, Division of Miles Laboratories, Inc. v. Industrial Comm'n* (1974), 56 Ill. 2d 272, 307 N.E.2d 118.) In the instant case, the two-person majority of the Commission wrongly relied upon the arbitrator's position as fact finder to apply a manifest weight of the evidence standard.

The primary issue, as I see it, is whether more than one inference can be drawn from the facts of this case. The arbitrator concluded "that there is nothing in the evidence to show that the environment was such as to be an increased risk beyond that to which the general public is subjected." The majority of the Commission accepted that conclusion, the circuit court confirmed it, and now the majority says

that the inference drawn by the arbitrator is one permissible inference in this case and, hence, must be affirmed.

In the case before us, the evidence indicated that the building where Brady worked was made of corrugated metal and that the exterior walls were about one-eighth inch thick. The building was located 47 feet from the highway at a point where the descending grade of the curving roadway sloped 30 degrees downward toward the building, which was located some 2½ feet below the highway elevation. The roadway was icy and slippery on the day of the accident and was heavily travelled, particularly by heavily loaded gravel trucks proceeding from a nearby quarry.

Furthermore, the evidence showed that Brady had to conduct his work at a drafting table in the corner of the building nearest the highway for at least eight hours each day, five days each week, all year, regardless of driving conditions or traffic. No member of the general public was so required. Only one conclusion can be drawn from that evidence: that Brady was exposed to a risk common to the general public to a greater degree than any other person, and hence, that the injury arose out of his employment.

The majority is wrong in saying that there was "evidence that the conditions of the claimant's employment did not increase his risk of injury beyond that to which the general public in that vicinity was exposed." (192 Ill. App. 3d at 12.) There was no such evidence, and, as I have shown, an inference to that effect cannot be drawn. Accordingly, there was no question of the manifest weight of the evidence. The decision of the Industrial Commission was erroneous as a matter of law.

Illinois cases have held that compensation should be awarded where the conditions of one's employment enhance the risk of injury beyond the risk to the general public. In *Material Services Corp., Division of General Dynamics v. Industrial Comm'n* (1973), 53 Ill. 2d 429, 292 N.E.2d 367, an employee drowned when her car rolled down her employer's sloping parking lot and into the Illinois Deep Waterway, a canal adjacent to the parking lot. No guardrails or other barriers separated the parking lot from the canal. The supreme court upheld an award of workers' compensation death benefits in that case, finding that the employee's death was traceable to the employment environment as a contributing proximate cause. Justice Underwood, speaking for the court, stated:

> "With respect to the element of causation, it is also well settled that it is not incumbent upon the claimant to prove that the hazard to which he was exposed in the employment environment was the sole cause of injury. As we stated in *City of Chicago v.*

*Industrial Com.* (1970), 45 Ill. 2d 350, 352[, 259 N.E.2d 5, 7,] ' "To come within the statute the employee must prove that some act or phase of the employment was a causative factor in the ensuing injury. He need not prove it was the sole causative factor nor even that it was the principal causative factor, but only that it was *a* causative factor in the resulting injury." ' " (Emphasis in original.) 53 Ill. 2d at 434, 292 N.E.2d at 370.

In the case at bar, the arbitrator ruled that the proximity of the building to the highway, the location of the curve, and the descending grade of the roadway were not the cause of Brady's injury. That is correct, of course. But certainly Brady's presence that day in his place of employment standing at his work table was one of the causative factors. He could not choose the hours or the conditions of his work; he had to remain at risk eight hours each day.

In *Union Starch, Division of Miles Laboratories, Inc. v. Industrial Comm'n* (1974), 56 Ill. 2d 272, 307 N.E.2d 118, the claimant worked in a starch refinery where the building was very warm. The employer allowed the employees to sit in windows or on roofs during their breaks. When the claimant stepped onto the roof of a shed in an attempt to obtain some fresh air while he drank a can of pop during a break, the roof gave way beneath him. He fell to the ground below and suffered injuries. The supreme court ruled that the condition of the work premises was a causative factor of his injury and that the employment increased the claimant's risk of exposure to injury. In *Union Starch*, plainly the heat inside the building and the condition of the roof were two environmental factors which contributed to the claimant's injury.

Another case where the work environment enhanced the risk of exposure to injury was *Holthaus v. Industrial Comm'n* (1984), 127 Ill. App. 3d 732, 469 N.E.2d 237, where a city employee who was preparing the municipal swimming pool for public use was attacked and shot by an escaped convict while she was working alone at the pool. We reversed the denial of an award by the Industrial Commission and concluded that the claimant had established that the site at which she was required to work created an enhanced risk of criminal assault greater than the risk to the general public. Acknowledging that the desperate escapee might have happened upon a member of the general public at that location, as he did a short time after shooting the claimant, we stated:

"However, the facts remain that the general public was neither required to be there nor had reason to be there, and [claimant's] employment caused her to be there at various times and fre-

quently alone." (127 Ill. App. 3d at 736, 469 N.E.2d at 705.)
Applying the same reasoning to the instant case, the general public was not required to be in the building where Brady was working, nor had reason to be there for eight hours on a day when highway travel was hazardous and gravel trucks were travelling in close proximity to the front of the building.

Still another case reached the same result. In *County of Cook v. Industrial Comm'n* (1988), 165 Ill. App. 3d 1005, 520 N.E.2d 896, a county court employee was eating lunch in her car in the parking lot provided for employees, as was customary, when she was assaulted and stabbed by a man demanding money. We ruled that the claimant's injury did arise out of her employment and that, where an employee is likely to encounter persons who are liable to attack, the injury may arise out of the employment. Claimant's work environment particularly subjected her to the hazards of being attacked since there was considerable activity in the felony court rooms that day. Having no place to eat lunch except in her car also enhanced her exposure to attack beyond that of the general public. We said, "Eating in the car required her to remain in the lot for a longer period than the time a member of the public would remain in the lot." (165 Ill. App. 3d at 1010, 520 N.E.2d at 900.) Thus, the increased length of time the employee was exposed to the risk of attack was the basis for a finding that the employee was subjected to a greater risk than the general public. The same is true in the case before us. The increased amount of time Brady spent exposed to the hazards of working in a thin-walled building at an unprotected location next to a heavily travelled highway subjected him to a greater risk than the general public.

This general principle was recently affirmed by the Illinois Supreme Court in *Caterpillar Tractor Co. v. Industrial Comm'n* (1989), 129 Ill. 2d 52, 58, where the court said:

"If an employee is exposed to a risk common to the general public to a greater degree than other persons, the accidental injury is also said to arise out of his employment."

As indicated above, the only reasonable inference from the evidence in this case is that Brady was exposed to the risk of injury to a greater degree than other persons. That plainly requires a finding that his injury arose out of his employment.

Illinois, of course, has never adopted "the positional-risk theory," which would compensate an employee for any injury which occurs while he is at his place of employment regardless of whether the conditions or nature of employment increased the risk of injury beyond that to which the general public was exposed. *Campbell "66" Express, Inc.,*

*v. Industrial Comm'n* (1980), 83 Ill. 2d 353, 415 N.E.2d 1043.

However, in cases involving "travelling employees," the courts have frequently held that the injuries arose out of the employment. For example, in *Campbell "66" Express*, a travelling employee, a truck driver, injured by a tornado was held to have been subjected to risks of injury beyond that to which the general public was exposed because he had to drive regardless of the weather. In *C.A. Dunham Co. v. Industrial Comm'n* (1959), 16 Ill. 2d 102, 156 N.E.2d 560, the death of an employee caused by the felonious mid-air explosion of the airplane he was travelling in was held to have arisen out of his employment. In *Dunham* the court said:

> "In our judgment, under the tenor and scope of the case law reviewed herein, where the street becomes the milieu of the employee's work, he is exposed to *all* street hazards to a greater degree than the general public. ***
>
> ***
>
> From this review of the relevant authorities, it is evident that for an accident to 'arise out of' the employment it is no longer necessary that it originate in a risk peculiar to the employment ***." (Emphasis in original.) 16 Ill. 2d at 111-12, 156 N.E.2d at 565.

By my view, it is illogical to deny compensation to Brady, an employee injured in a truck accident while working on his employer's premises, when employees who have sustained an accidental injury while traveling in connection with their work have frequently been awarded compensation for injuries resulting from traffic accidents, tornadoes, and mid-air explosions.

The majority has apparently ignored the guiding principal for interpreting the Workers' Compensation Act: The Act should be liberally construed to accomplish its purpose and objects. (*Peoria County Belwood Nursing Home v. Industrial Comm'n* (1987), 115 Ill. 2d 524, 505 N.E.2d 1026.) Accepting the Commission's narrow construction of "arising out of" in the case at bar does not accomplish the purpose and object of the statute. I agree with the result suggested by the *amicus curiae* brief of the Attorney General and would reverse the circuit court of Will County and the Industrial Commission, and I would grant Brady an award.

WOODWARD, J., joins in the dissent.