687 N.E.2d 334 (1997)
293 Ill. App.3d 226
227 Ill.Dec. 260
The SPRINGFIELD SCHOOL DIST. NO. 186, Appellant,
v.
The INDUSTRIAL COMMISSION et al. (John M. DeAngelo, Appellee).
No. 4-96-0823 WC.
Appellate Court of Illinois, Fourth District, Industrial Commission Division.
Argued May 21, 1997.
Decided October 31, 1997.
Rehearing Denied December 16, 1997.
*335 Thomas Mark Schmidt (argued), Livingstone, Mueller, O'Brien & Davlin, P.C., Springfield, for Springfield School Dist. #186.
Steven C. Mills (argued), Springfield, for Industrial Com'n of Illinois.
Justice RARICK delivered the opinion of the court:
Claimant, John DeAngelo, sought benefits pursuant to the Workers' Compensation Act (Act) (820 ILCS 305/1 et seq. (West 1994)) for injuries he allegedly sustained on April 8, 1994, while in the employ of Springfield School District, employer. The arbitrator found that claimant suffered a work-related accident and awarded temporary total disability and medical benefits. On review, the Industrial Commission (Commission) affirmed the decision of the arbitrator and the circuit court of Sangamon County confirmed the decision of the Commission. Employer appeals, contending the finding of causal connection between claimant's employment and his injury is against the manifest weight of the evidence Employer also questions whether an employee who suffers an injury as a result of an unexplained assault by a stray dog in a residential area presents a compensable claim as a matter of law.
Claimant began working for employer in 1981 as a custodian. As a result of a back injury, claimant transferred to the position of security guard for employer in 1985 and continued in that capacity until the incident on April 8, 1994. As a security guard, claimant was responsible for maintaining security at an elementary school, three mobile classrooms and a service center all sitting on the same property located in a predominantly single-family residential area. His duties included checking doors and windows and looking for unsafe conditions. On April 8 at approximately 4:40 a.m., claimant was in the process of making his rounds when he encountered a dog near one of the mobile classrooms. The dog growled, sniffed claimant and walked away. Claimant continued walking around the classroom when the dog came back, ran up to him and grabbed him by the pant cuff. The dog then backed off and repeated his attack. Claimant kicked the dog as hard as he could with his left foot and immediately felt pain shooting up his left leg into his spine, neck and head and down his right arm. Claimant noticed no bruising or swelling to his other leg as a result of the dog attack but did experience some redness around the ankle, which later disappeared. Claimant testified the dog seized him but did not break the skin. Claimant completed his rounds, left a note for his supervisor and went home. Although claimant returned to work the following Monday, he stated the pain never abated, forcing him to stop working altogether on April 15. Claimant initially sought medical care on April 12 from Dr. F. William Schroeder. Dr. Schroeder took X rays and sent claimant to The Spine Center for evaluation. His diagnosis was chronic low back pain without evidence of nerve root compression. The doctor's records for the April 12 visit contain no reference to any incident involving a dog; later records, however, indicate claimant's injury was sustained on April 8. Claimant was enrolled in a pain management program and participated in physical and occupational therapy.
On June 7, 1994, claimant returned to his family physician, Dr. Bussing, for a physical examination. Dr. Bussing's report indicated claimant's neurological examination was normal for both arms and both legs. He also *336 found no structural impairment to the neck. He then referred claimant to a neurosurgeon, Dr. McIlhany. Claimant saw Dr. McIlhany on June 21, 1994. Dr. McIlhany diagnosed claimant's condition as neck pain of myofascial origin and recommended continued therapy and exercise. At the time of the arbitration hearing, claimant had not yet returned to work and was still undergoing therapy.
Claimant's supervisor testified he met with claimant in late March 1994 to explain to him his position as security guard would be ending soon. He further advised him a custodian position was available to which he could transfer. Claimant told the supervisor he would have to check with his doctor to determine whether or not he could perform custodial work. The supervisor also testified he had never encountered any instances of security guards having problems with dogs at the location claimant watched, although there had been reports of such incidents at other locations. A fellow security guard confirmed the fact he never had encountered any dogs or wild animals while patrolling the same grounds to which claimant had been assigned.
In a workers' compensation proceeding, it is the function of the Commission to determine the credibility of witnesses, to weigh testimony and to decide the weight to be accorded the evidence. Parro v. Industrial Comm'n, 167 Ill.2d 385, 396, 212 Ill.Dec. 537, 542, 657 N.E.2d 882, 887 (1995); Rambert v. Industrial Comm'n, 133 Ill.App.3d 895, 902, 87 Ill.Dec. 836, 841, 477 N.E.2d 1364, 1369 (1985). Only the Commission has the responsibility to resolve conflicts in the testimony and to draw reasonable inferences from the evidence. Rambert, 133 Ill.App.3d at 902, 87 Ill.Dec. at 841, 477 N.E.2d at 1369. A court of review is not to disregard permissible inferences merely because other inferences might also be drawn from the same evidence. Holthaus v. Industrial Comm'n, 127 Ill.App.3d 732, 736, 82 Ill.Dec. 703, 705, 469 N.E.2d 237, 239 (1984). Given such principles, we must affirm the decision of the Commission as confirmed by the circuit court in this instance.
An injury may be said to arise out of one's employment when, upon consideration of all of the circumstances, there is apparent to the rational mind a causal connection between the condition under which the work is performed and the resulting injury. Holthaus, 127 Ill.App.3d at 736, 82 Ill. Dec. at 705, 469 N.E.2d at 239. See also Brady v. Louis Ruffolo & Sons Construction Co., 143 Ill.2d 542, 548, 161 Ill.Dec. 275, 277, 578 N.E.2d 921, 923 (1991); Math Igler's Casino, Inc. v. Industrial Comm'n, 394 Ill. 330, 334, 68 N.E.2d 773, 775 (1946). In addition, an injury may be said to arise out of the employment if the conditions or nature of the employment increase employee's risk of harm beyond that to which the general public is exposed. Brady, 143 Ill.2d at 548, 161 Ill.Dec. at 277, 578 N.E.2d at 923; Kemp v. Industrial Comm'n, 264 Ill.App.3d 1108, 1110, 201 Ill.Dec. 805, 806, 636 N.E.2d 1237, 1238 (1994). Here the Commission concluded claimant was exposed to a risk greater than that of the general public and that a stray dog is a "natural" risk. While it is true the location to which claimant was assigned had not experienced problems with stray dogs before, other school grounds within the district had. More importantly, claimant was at a location when and where the general public would not and should not be located. The incident occurred at 4:40 in the morning on school grounds at a time when claimant was to protect the property against intruders. Claimant's confrontation with the dog occurred while he was in the performance of his watch duties, and his injuries accordingly resulted from protecting both the school grounds and himself. His injuries therefore are causally related to his employment, and, as a result, claimant is entitled to compensation for them. See Holthaus, 127 Ill.App.3d at 736-37, 82 Ill.Dec. at 705-06, 469 N.E.2d at 239-40.
For the aforementioned reasons, we affirm the decision of the circuit court of Sangamon County confirming the decision of the Industrial Commission awarding claimant benefits.
Affirmed.
HOLDRIDGE and COLWELL, JJ., concur.
RAKOWSKI, J., dissents; McCULLOUGH, P.J., joins.
*337 Justice RAKOWSKI, dissenting:
To be compensable under the Act, an injury must "aris[e] out of and in the course of the employment." 820 ILCS 305/2 (West 1996); Parro, 167 Ill.2d at 393, 212 Ill.Dec. at 540, 657 N.E.2d at 885. "Both elements must co-exist in order for an employee's injury to be found compensable" (Lee v. Industrial Comm'n, 167 Ill.2d 77, 80, 212 Ill.Dec. 250, 252, 656 N.E.2d 1084, 1086 (1995)), and claimant bears the burden of establishing both requirements (Castaneda v. Industrial Comm'n, 97 Ill.2d 338, 341, 73 Ill.Dec. 535, 537, 454 N.E.2d 632, 634 (1983)).
In the instant case, it is undisputed that claimant's injury arose in the course of his employment. For the reasons that follow, however, I respectfully suggest that on this record it is equally clear that claimant was not exposed to risks beyond those to which the general public is exposed and, thus, his injury did not arise out of his employment.
"`Arising out of' refers to the causal connection between the employment and the injury. The causal connection is demonstrated if the claimant establishes that the injury's origin lies in some risk related to the employment. [Citations.] In addition, an injury may be said to arise out of the employment if the conditions or nature of the employment increases the employee's risk of harm beyond that to which the general public is exposed." Brady, 143 Ill.2d at 548, 161 Ill.Dec. at 277, 578 N.E.2d at 923.
According to Professor Larson, employee risks fall into three categories: employment risks, personal risks, and neutral risks. Employment risks are those directly associated with employment, like excavation cave-ins and machinery catching fingers or limbs. Personal risks are those personal to the employee, like assaults by personal enemies or diseases not connected with work. Although employment risks are universally compensable, personal risks are universally noncompensable. Between these two areas lies the third: risks neither distinctly employment related nor distinctly personal in character. Illustrative of a neutral risk is where a man, hard at work in the middle of a factory yard, is hit by a stray bullet from nowhere, stabbed by a lunatic, struck by lightning, injured by a piece of tin blown from someone's roof, or bit by a mad dog. 1 A. Larson, Law of Workmen's Compensation § 7.30 (1996); see also Fligelman v. City of Chicago, 275 Ill.App.3d 1089, 1093, 212 Ill.Dec. 329, 331-32, 657 N.E.2d 24, 26-27 (1995).
It is inescapable that the claimant was exposed to a neutral risk. The majority opinion and the Commission's decision characterize claimant's risk as a "natural risk." The opinion does not define "natural risk" or explain how such a term applies to the instant case. Nor is there any citation to authority. My own research has located four cases that use the term "natural risk" in a workers' compensation context; in all of these cases, however, "natural risk" is a term used to describe risks that do not arise out of employment. County of Cook v. Industrial Comm'n, 68 Ill.2d 24, 11 Ill.Dec. 546, 368 N.E.2d 1292 (1977) (natural risk of stroke); J.I. Case Co. v. Industrial Comm'n, 36 Ill.2d 386, 223 N.E.2d 847 (1966) (natural risk of being struck by lightening); Illinois Bell Telephone Co. v. Industrial Comm'n, 35 Ill.2d 474, 220 N.E.2d 435 (1966) (natural risk of heart attack); Alzina Construction Co. v. Industrial Comm'n, 309 Ill. 395, 141 N.E. 191 (1923) (natural risk of being struck by lightening, discussing case from Montana).
In the instant case, a review of the evidence does not disclose any prior dog attacks or problems with stray dogs at the Douglas school. Testimony was elicited from three people: claimant, Vergil Jonas (another security guard), and Anthony Kamnick (a security warehouse supervisor). Claimant worked for the school district from 1981 until his injury in 1994. During that period of time, he had never experienced any problems with dogs at the school. Vergil Jonas was asked the following questions and gave the following answers:
"Q. At any time when you worked as a security guard [at] that location, did you ever encounter any dogs roaming around the grounds?
A. No, I didn't.
Q. Did you ever encounter any wild animals at all?
A. No, none whatsoever."
*338 Anthony Kamnick stated on direct examination that he was not aware of any security guard at this school having a problem with stray dogs. On cross-examination, he was asked about dog problems at other locations throughout the school district and stated:
"Q. Oh, I know at other locations, yes, we have had a problem with a dog here and there. Exactly where, I don't know."
The majority concludes from this evidence that it is reasonable to infer that claimant was exposed to a risk beyond that to which the ordinary public was exposed. In support of that conclusion, the majority relies on the fact that the claimant was at a location when and where the general public would not and should not be, that claimant's job was to protect the school property against intruders, that the confrontation with the dog occurred while he was performing his duties, and that other undefined problems had occurred at other undefined locations. I respectfully suggest that these are distinctions without a difference and/or are not borne out by the record.
In the law of evidence, an inference is "a truth or proposition drawn from another which is supposed or admitted to be true. A process of reasoning by which a fact or proposition sought to be established is deduced as a logical consequence from other facts, or a state of facts, already proved or admitted." Black's Law Dictionary 778 (6th ed.1990). However, where the facts are not in dispute, as in the instant case, "the question of whether an injury is caused by a risk attributable to employment is not a factual inference [to be] drawn from the other facts but is the legal conclusion to be determined by them." Kemp, 264 Ill.App.3d at 1111, 201 Ill.Dec. at 807, 636 N.E.2d at 1239.
There is no evidence in the record to suggest dog attacks are more likely to occur at the school as opposed to any other place. There is no evidence to suggest that dogs are more frequently seen or around at 4:40 a.m. or are more likely to attack at that time. Finally, the record does not establish that claimant was attempting to remove the dog from the school premises when he was attacked. Had this been the case, I too would agree that claimant's injury arose out of his employment. At no time, however, did claimant testify that the dog was damaging school property or that he was attempting to remove the dog from the premises. Rather, the evidence is clear that the dog attacked claimant for no apparent reason as he was patrolling the premises. There are simply no facts, and no inferences to be drawn from any facts, that claimant's work as a security guard occasioned the dog's assault.
The evidence in this case establishes that the area in question is primarily a residential neighborhood consisting of single-family homes. It is impossible to draw a conclusion that somehow a security guard simply walking in this area in the early morning hours of a spring day had an increased risk of an attack by a stray dog over and above the risk to the general population of Springfield. Although the majority finds important the fact that other problems occurred here and there, I suggest that such reliance is misplaced. The fact that stray dogs may have presented some undefined problems at other undefined locations is not a proper factual subject matter from which an inference can be drawn. First, there is no evidence what the "other problems" were or if they involved dog attacks on people. One can only speculate. Nor is there any evidence as to when the "other problems" occurred, at what time of day, or at what location. There is no evidence as to the frequency of these "other problems." Could it be one occurrence, two occurrences, three occurrences? Again, one can only speculate. Finally, there is no evidence as to over what period of time these other problems took place. I respectfully suggest that it is not reasonable to say that a logical inference can be drawn to connect an undefined dog problem at an unknown time and location to the specific instance of a singular stray dog attack at 530 West Reynolds Street, Springfield, Illinois.
The only basis for allowing recovery under the facts of this case would require a departure from the existing authority and adoption of what has been termed the "positional risk doctrine." Under this doctrine, an injury may be said to arise out of employment if the injury would not have occurred but for the fact that the conditions or obligations of the *339 employment placed claimant in a position where he was injured by a neutral force, i.e., meaning a force neither personal to the claimant nor distinctly associated with the employment. A. Larson, The Positional-Risk Doctrine in Worker's Compensation, 1973 Duke L.J. 761. However, as our supreme court has stated in Brady, "[t]his court has previously declined to adopt the positional risk doctrine, believing that the doctrine would not be consistent with the requirements expressed by the legislature in the Act. (See Campbell `66' Express, Inc. v. Industrial Comm'n (1980), 83 Ill.2d 353, 355-56 [47 Ill.Dec. 730, 731, 415 N.E.2d 1043, 1044]; Decatur-Macon County Fair Association v. Industrial Comm'n (1977), 69 Ill.2d 262, 268 [13 Ill.Dec. 662, 665, 371 N.E.2d 597, 600].) For the reasons stated in Campbell `66' Express and Decatur-Macon County Fair Association, we continue to adhere to that view." Brady, 143 Ill.2d at 552-53, 161 Ill.Dec. at 280, 578 N.E.2d at 926.
For the reasons stated, I would reverse the judgment of the circuit court of Sangamon County.
McCULLOUGH, P.J., joins in this dissent.