(No. 39963.—■

J. I. Case Company, Appellee, vs. The Industrial Commission et al.—(Harold Ogden, Appellant.)

*Opinion filed Nov. 14, 1966.—Rehearing denied Jan. 17, 1967.*

Schaefer and Kluczynski, JJ., dissenting.

Gerald F. Tuite, of Rockford, (Gerald A. Facchini, of counsel,) for appellant.

Welsh, Welsh, Holmstrom & Hyzer, of Rockford, (John Holmstrom, Jr., of counsel,) for appellee.

Mr. Chief Justice Klingbiel delivered the opinion of the court:

Harold Ogden, an employee of J. I. Case Company, recovered a workmen's compensation award for an alleged

injury to his left arm. On review the circuit court of Winnebago County set it aside, and the claimant appeals.

The facts are largely undisputed. Claimant was employed at a large warehouse of the company's Rockford works. The warehouse consists of three floors and is 1040 feet long by 140 feet wide. A loading dock runs the entire length of the first floor, and is located inside the building. An overhead monorail running through the building is used to hook parts on, which are pushed along the track. There is an elevator about midway between the east and west ends of the building.

On August 20, 1962, shortly before noon Ogden and a fellow worker were walking along the loading dock, the latter employee being some 200 feet ahead of Ogden and about in the middle of the building. An electrical storm was taking place. As they approached the elevator shaft they noticed a "bolt of lightning" following along the monorail. The other employee dropped down to the floor but the claimant remained standing. The lightning had apparently come from the south, hit the monorail and skipped along it until it almost reached the place where Ogden was standing. It then left the track and landed to the left and a few feet behind him, making a loud, crashing noise. He was not struck in any way, but testified that he felt a tingling sensation along the left side of his face and a numbness in his left leg and arm.

After lunch the employees were sent home because of a power failure, but the claimant returned to work the following day, and continued working thereafter. According to his testimony he experienced a severe headache the evening of the occurrence, and has had a continuing numbness in his left arm ever since then. Medical testimony covering a considerable period of time thereafter showed he was suffering from hysterical loss of sensation in the left hand, wrist and forearm, with some atrophy in the arm. The testimony regarding the extent and effect of claimant's injury need not

be recounted in detail, since the principal question is whether the injury, if any, arose out of his employment.

The Workmen's Compensation Act requires that an accidental injury, to be compensable, must "arise out of" the employment. It is not enough that it may be sustained, as here, in the course of the employment. The mere fact that the employee was present at the place of injury because of his employment will not suffice unless the injury itself is a result of some risk of the employment. An injury which cannot fairly be traced to the employment as a contributing proximate cause, and which comes from a hazard to which the worker would have been equally exposed apart from it, does not arise out of it. The causative danger must be peculiar to the work. (*Illinois Country Club* v. *Industrial Com.* 387 Ill. 484.) In the case cited a caddy was struck by lightning on a country club golf course while he was performing his duties and holding two golf bags containing about thirty clubs made partly of steel. It was held that the resulting injury bore no reasonable relation to the nature of his work and did not arise out of it. In reversing a judgment confirming an award we observed that "Injuries resulting from exposure to weather conditions, such as lightning, are generally deemed risks to which the general public is exposed and not within the contemplation of workmen's compensation acts, although the injured person, at the time he suffered his injury, may have been performing duties incident to and in the course of his employment." It is only where the character of employment intensifies the risks arising from these extraordinary natural causes that the accident can fairly be said to arise out of the employment.

In the case at bar the claimant relies upon the presence of the monorail as exposing him to more than a natural risk from lightning. While it is common knowledge that metal is a conductor of electricity there is nothing in the record to show that this monorail or the building through which it ran was a place of special or unusual danger during an

electrical storm. In *Alzina Construction Co.* v. *Industrial Com.* 309 Ill. 395, lightning struck and killed an employee who was engaged in wheeling sacks of cement from a box-car into a building about thirty feet from railroad switch tracks. On the north side of the structure was a narrow gauge railroad, the rails being laid on steel ties, and the sacks of cement were being wheeled into the building on trucks which had steel wheels and braces. A meteorologist testified as an expert that in his opinion a man in the conditions surrounding this employee was exposed to a greater risk than others in the community because of the isolation of the structure, but he did not think the steel tracks and ties and the use of steel at the cement house created any additional risk. After carefully reviewing the record and applicable authorities we reversed a judgment which had sustained an award, holding that the claimant failed to show the presence of an extra danger, to which employees in ordinary occupations or places of employment were not subject. It was pointed out that the decision of such a question cannot depend upon inference arrived at by conjecture or speculation, and that the burden of proof is upon the applicant to show that the employee's position was more hazardous than that of others in the same community or that by reason of the employment the risk was greater.

In *Abell Chevrolet Co.* v. *Industrial Com.* 370 Ill. 460, an employee working in a garage building was injured by falling debris when the building was partially demolished by a cyclone. He contended that the building collapsed because it was carelessly built and because both doors in the east and south walls were open, thereby allowing the wind to sweep through. No evidence had been introduced, however, to sustain either the claim of construction defects or the theory that the open doors would be more liable to cause a building to collapse in a cyclone than if the doors were closed. In reversing a judgment which had sustained an award we concluded that "We cannot say from the record

that there was an increased hazard to defendant in error, arising out of his employment, which subjected him to an exceptional risk greater than to other persons who were exposed to the storm, in and out of the various buildings in the community, at the time."

For similar reasons we think the claimant in the case at bar must fail. No evidence was introduced to show that the monorail exposed him more to the risk of injury from lightning than were persons in other employments in the locality, or that the risk of being injured by lightning was enhanced by reason of his place of employment. His injuries, if any, inflicted by the lightning were not shown to have arisen out of his employment, and they are therefore not compensable.

*Eisner Food Stores* v. *Industrial Com.* 33 Ill.2d 474, upon which the claimant relies, is not controlling. In that case the manager of a store in a shopping center was fatally injured when a sign wall over the entrance lobby crashed through the roof during a severe wind storm. This court upheld an award because the record showed the design and location of the sign wall made it unusually susceptible to wind damage. No comparable showing was made in the case at bar.

For the reason stated we conclude that the circuit court of Winnebago County was correct in setting aside the award. The judgment will be affirmed.

*Judgment affirmed.*

Mr. JUSTICE SCHAEFER, dissenting:

It is difficult for me to understand just what is meant by the following statement in the majority opinion: "No evidence was introduced to show that the monorail exposed him more to the risk of injury from lightning than were persons in other employments in the locality, or that the risk of being injured by lightning was enhanced by reason of his place of employment." Clearly, persons employed in other

places were not required to work on a loading dock, underneath a roof and a monorail which served as an efficient conductor of lightning. What is apparently meant, therefore, is that recovery is denied because of the absence of expert testimony to the effect that lightning will travel along a monorail of the type here involved. Apart from the fact that the evidence showed that the monorail actually served as a conductor for the lightning in this case, I think that the commission properly took judicial notice of its suitability as a conductor even in the absence of expert testimony. See, *e.g., DeLuca* v. *Board of Park Comrs.*, (Conn. 1919) 107 Atl. 611.

The opinion of the court describes the occurrence of August 20, 1962, but it does not mention the fact that on September 13, 1962, lightning again struck an "intercom box" close to where the claimant was standing on the third floor of the building, six feet from the elevator shaft, and just above the location where the first incident occurred. If proof beyond the first incident was required to show that this monorail and the building through which it ran was a place of special or unusual danger during an electrical storm, it was supplied by the second.

In my opinion, *Illinois Country Club* v. *Industrial Com.*, 387 Ill. 484, upon which the majority relies, should be overruled. It is contrary to the principles expressed and applied in *Chmelik* v. *Vana,* 31 Ill.2d 272, and *C. A. Dunham Co.* v. *Industrial Com.*, 16 Ill.2d 102. To say that the general public is exposed to the same danger from lightning as a golf caddy who is out on the course carrying two bags of clubs seems quite unrealistic. His alternatives were to remain in the open, to go under a tree, or to leave the clubs and players for whom he was caddying and look for another job.

A similar unrealistic approach was rejected in *American Freight Forwarding Corp.* v. *Industrial Com.,* 31 Ill.2d 293, which overruled the earlier *Consumers Co.* v. *Industrial*

*Com.,* 324 Ill. 152. Both cases involved injuries from frostbite. The earlier case denied recovery. In the more recent case the court said: "The average man, free of obligations of any particular employment, does not stay outdoors for 9½ hours when the average temperature is 6 degrees below zero. The ordinary person is not engaged in outside work in cold weather and experience teaches us to stay inside when necessary to avoid the risk of frostbite. Petitioner, unfortunately, did not have the choice of staying inside or not." 31 Ill.2d at 296-7.

Mr. JUSTICE KLUCZYNSKI concurs in this dissent.