BEECHER WHOLESALE GREENHOUSE, INC., Appellant, v. THE IN-
DUSTRIAL COMMISSION *et al.* (Chester Mark Kozlowski, Appellee).

Third District (Industrial Commission Division)   No. 3—87—0629WC

Opinion filed June 7, 1988.

Andrew A. Galich, of Womack & Galich, of Chicago, for appellant.

No brief filed for appellee.

JUSTICE WOODWARD delivered the opinion of the court:

Claimant, Chester Mark Kozlowski, filed an application for adjustment of claim under the Workers' Compensation Act (Act) (Ill. Rev. Stat. 1985, ch. 48, par. 138.1 *et seq.*), for a work-related injury which occurred on July 24, 1984, at the premises of Beecher Wholesale Greenhouse, Inc. (respondent). Claimant alleged that he had been struck by lightning while making a business call and, as a result, had suffered debilitating brain damage. On April 3, 1986, the arbitrator found claimant was permanently and totally disabled under the Act. Both the Industrial Commission (Commission) and the circuit court of Will County affirmed the decision. We affirm.

The relevant facts are as follows. Claimant was working as a salesman for the respondent, a wholesale greenhouse. He had worked there since 1977, initially employed in a high school work-study program, and after graduation, as a full-time employee.

On July 24, 1984, claimant was sitting in respondent's office making telephone calls to clients. At approximately 11 a.m., he was talking to Helen DeVries (DeVries) of Momence Produce, a concern which was located about 20 miles from respondent's facilities. DeVries testified that at the time of the call, a rainstorm was producing significant

thunder and lightning. After talking with DeVries about an order, DeVries suddenly realized that she was not talking with him. There had been no disconnection on the telephone line; claimant simply was "not there." DeVries further stated that she previously had talked to claimant a number of times and noticed nothing unusual about him with respect to his mental capabilities.

Phillip Nuccio (Nuccio), a co-employee of claimant, testified that at 11 a.m. he was putting plants in trays in respondent's greenhouse. A storm was creating a great deal of thunder and lightning. Nuccio heard a "boom, crash, or something" in the immediate vicinity. His employer, James Dancik (Dancik), called him to the greenhouse office. In the office, Nuccio saw claimant setting before his desk in a state of "shock." Along with Dancik, he attempted to snap claimant out of his dazed condition. An ambulance was called, and Nuccio went with claimant to the hospital, where he noticed red marks on claimant's right palm and right ear.

Michael Klugo, another co-employee of claimant, stated that on the date and time in question, he was called to the office by his employer. Claimant was entirely limp and unresponsive to efforts to rouse him. The telephone receiver was off its cradle and lying next to claimant.

Claimant's mother, Velva Kozlowski, testified that claimant attended both regular and special eduction classes at high school, from which he graduated in 1980. Prior to July 24, 1984, claimant had a good memory and a positive outlook on life. Following the disputed incident, claimant had difficulty remembering recent events, and his mood was often depressed. Claimant suffered from continuing weakness and lethargy and pains in his right ear and right arm.

Mrs. Kozlowski was told by Dancik that claimant had been talking on the phone when Dancik heard a loud pop and saw claimant put the phone receiver down very slowly. Thereafter, claimant sat dazed and unresponsive.

Claimant testified that he remembered coming to work at 6 a.m. About 9 a.m. he began calling clients and taking orders. The next thing he recalled was waking up in the hospital. Claimant stated that since the accident he experienced a lot of pain and generally felt weak. He suffered from pain in his right ear, severe headaches, and has difficulty both concentrating on and comprehending what he reads.

Dr. Stephen Trobiani, a neurologist, and Lawrence Egel, a clinical psychologist, testified for claimant. After examining claimant at length, each determined that he was permanently and totally disabled.

Edward Steffan, a certified vocational rehabilitation counselor, testified that claimant was a poor candidate for employment and should be considered for a possible placement in a noncompetitive sheltered workshop setting.

Paul Hansen, an electrical engineer, stated that the conditions in the greenhouse increased the likelihood of injury due to a lightning strike.

For the defendant, Dr. David Shenker, a neurologist, testified that he could not objectively attribute claimant's current problems to the alleged injury. Dr. Shenker opined that claimant was capable of being employed in some capacity.

On appeal, respondent raises two issues: (1) the decision of the Commission is against the manifest weight of the evidence; and (2) lightning strikes are not compensable as a matter of law.

■ Respondent initially argues that the Commission's decision was against the manifest weight of the evidence. Specifically, it contends that both the finding of an occurrence of a lightning strike and that defendant is permanently and totally disabled are against the manifest weight of the evidence. It is axiomatic that a reviewing court will not disturb the Commission's decision unless it is against the manifest weight of the evidence. *Luckenbill v. Industrial Comm'n* (1987), 155 Ill. App. 3d 106.

■ Respondent asserts that there is nothing in the record which supports the Commission's conclusion. We disagree. The record before us is replete with compelling circumstantial evidence that claimant was struck by lightning on the date in question. At approximately 11 a.m., claimant was on the phone talking with a customer. There is substantial evidence that there was an electrical storm of significant magnitude occurring at that time. Employees of the respondent heard a loud crash of lightning in the immediate vicinity. They were immediately summoned by their employer to help claimant, who was dazed and totally unresponsive to them. One fellow employee noticed red marks on claimant's right hand and right ear. The customer with whom claimant was talking stated that claimant stopped talking to her despite the fact that the line between them had not been disconnected. Since that time claimant has suffered from an organic brain syndrome which has seriously affected his short-term memory. An electrical engineer found that the telephone system at respondent's warehouse substantially increased the risk of a lightning-related injury. The fact that no one saw an electrical charge entering claimant's body through the telephone receiver or that claimant cannot describe what occurred does not lessen the importance of the above-cited cir-

cumstantial evidence. Moreover, respondent suggests no alternative interpretation of the events in question. There was more than enough evidence to support the Commission's finding of a lightning strike.

Further, respondent argues that the Commission's finding that claimant is totally and permanently disabled is based on erroneous evidence and contrary to the manifest weight of the evidence.

■ Respondent contends that claimant's testimony that all he knew about the disputed episode was talking on the telephone and waking up in the hospital constitutes a judicial admission. (*Hansen v. Ruby Construction Co.* (1987), 155 Ill. App. 3d 475.) Thus, he is bound by his sworn statement and Dr. Trobiani should not have been allowed to consider claimant's history at all. This argument is patently without merit. Obviously, in cases where a claimant by the apparent nature of his injury is unable to recount what occurred, examining physicians and psychologists must look to other reliable sources of information.

■ Further, respondent asserts that Dr. Trobiani and the psychologist, Egel, were allowed to consider inadmissible evidence, *i.e.*, hospital records, in arriving at their opinions regarding claimant's disability. Therefore, the Commission's reliance on their testimony was erroneous. In response, claimant cites *Wilson v. Clark* (1981), 84 Ill. 2d 186, where the supreme court held that an expert medical witness could base his opinion upon medical records which were inadmissible at trial if those records were of a kind reasonably relied upon by experts in the specific field in forming opinions on that subject. The testimony of Dr. Trobiani and Egel demonstrated that the disputed records were of the type on which experts could reasonably base their opinions. We have no reason to doubt this testimony and, therefore, find that they properly based, in part, their opinions regarding claimant's disability on the hospital records.

■ Finally, regarding this issue, respondent argues that the weight of the evidence supports its contention that claimant is employable rather than totally and permanently disabled. Dr. Trobiani, a board-eligible neurologist who made an examination at claimant's request, testified that he diagnosed claimant as having suffered an electrical injury which led to organic brain syndrome. In claimant, he found that the *organic brain syndrome manifested itself through impairment of concentration, impairment of recent memory, some defect in insight, and some anxiety.* Dr. Trobiani opined that the claimant's condition was permanent.

Egel, a clinical and neuropsychologist, examined claimant and performed numerous tests upon him. The tests indicated that claimant's

immediate and short-term memory capacities were extremely limited. Claimant's ability to use insight to conceptualize new stimuli was almost nonexistent. Claimant's right side performed tests in the deficient range; his dominant right grip was much weaker than his non-dominant left.

Egel stated that claimant suffered from organic brain syndrome which resulted from diffused damage to his brain. He opined that this condition resulted from a lightning strike on July 24, 1984, and that claimant was totally and permanently disabled.

Edward Steffan (Steffan), a certified vocational rehabilitation counselor, examined claimant and reviewed the pertinent records and test results. It was Steffan's opinion that due to the injury-related losses claimant had sustained in memory, concentration, and ability to learn, coupled with the fact he had been employed at only one type of work, claimant was a poor candidate for employment. Steffan believed that most likely claimant should be placed in a noncompetitive sheltered workshop.

The evidence in support of respondent's position is not sufficient to overcome the testimony of claimant's experts. The psychological evaluation performed by Linas Bielianskas reflects a number of claimant's profound post-accident problems. The report states that the course of claimant's treatment in 1985 at Rush-Presbyterian-St. Luke's Medical Center was suspended for several months due to claimant's deep depression, which, according to claimant's witness Egel, can be a component of organic brain syndrome. Moreover, this report indicated that psychological testing performed for eight months after the accident suggested mild impairment of attention and short-term memory.

The testimony of Dr. David Shenker, a neurologist who examined claimant at respondent's request, also reflected claimant's short-term memory problems. At best, Dr. Shenker's evaluation of claimant was ambivalent. On one hand, he found claimant to be employable. On the other, he stated that while claimant appeared to have a functional problem, he could not rule out a physical component to his problems.

On balance, we find that the manifest weight of the evidence supports the Commission's finding that claimant was totally and permanently disabled.

■ Further, respondent argues that claims based upon lightning-related accidents are not compensable by law. In support of this contention, respondent cites *Illinois Country Club, Inc. v. Industrial Comm'n* (1944), 387 Ill. 484, and *J. I. Case Co. v. Industrial Comm'n* (1966), 36 Ill. 2d 386. Neither of these cases stands for the proposition

that as a matter of law, lightning-based accidents are not compensable under the Act.

*Illinois Country Club* involved a situation in which the claimant was caddying for some golfers during a rainstorm. When he was struck by lightning, the claimant was carrying two sets of golf clubs made, in large part, of steel. The court found that claimant's testimony "fail[ed] to disclose a special or greater risk to him of being struck by lightning arising from his employment as a caddy." (*Illinois Country Club*, 387 Ill. at 491.) Consequently, the court held that claimant's injury was not reasonably related to the nature of and did not arise out of his employment. The court made no finding that lightning-related accidents were not compensable as a matter of law.

In *J. I. Case Co. v. Industrial Comm'n* (1966), 36 Ill. 2d 386, the claimant worked at a warehouse. During an electrical storm he was working at a loading dock on which a monorail was located. A lightning bolt hit the warehouse and traveled down the monorail. The lightning "left the track and landed to the left and a few feet behind him, making a loud, crashing noise." (*J. I. Case Co.*, 36 Ill. 2d at 387.) Claimant was not directly struck by the lightning but felt a tingling sensation on the left side of his face and numbness in his left arm and leg.

The *J. I. Case Co.* court found that no evidence was introduced to show that the monorail exposed him more to the risk of injury from lightning than were other employed people in the vicinity. Also, the court found that there was no evidence that claimant's risk of being injured by lightning was augmented by reason of his place of employment. Accordingly, the court found that the injury did not arise out of claimant's employment and was not compensable. Again, the *J. I. Case Co.* court made no finding that lightning-related accidents were not compensable as a matter of law.

In the instant case, the only evidence adduced regarding the claimant's risk of lightning-related injury came in the testimony of licensed electrical engineer Paul Hansen. Hansen testified that the condition of the respondent's telephone system increased the risk or hazard of electrical shock due to lightning or other causes to a person using the telephone. Specifically, Hansen pointed to the high humidity and high dirt content in the greenhouse as increasing conductivity along the surface of the telephone line. Hansen also noted that the telephone line is situated at a high point in the building and, therefore, serves as a target for lightning strikes. Moreover, Hansen stated that the telephone is not particularly well grounded, which would tend to induce currents in the telephone wire.

This unrebutted evidence was sufficient to demonstrate that claimant's use of respondent's telephone exposed him to greater risk of electrical shock caused by lightning. This injury arose out of claimant's employment and was consequently compensable under the Act.

For reasons stated above, the judgment of the circuit court of Will County is affirmed.

Affirmed.

BARRY, P.J., and McNAMARA, McCULLOUGH, and CALVO, JJ., concur.