**Laura McCUTCHEON, Employee–Respondent,**

v.

**TRI–COUNTY GROUP XV, INC.,**

and

**Missouri Rural Services Workers' Compensation Insurance Trust, c/o Alexsis, Inc., Self-insured Employer–Appellant.**

No. 20328.

Missouri Court of Appeals, Southern District, Division Two.

April 23, 1996.

---

Paul D. Larimore, Evans & Dixon, St. Louis, for appellant.

Gary G. Matheny, Farmington, for respondent.

PREWITT, Presiding Judge.

Following an award entered by an Administrative Law Judge, the Labor and Industrial Relations Commission entered an award in favor of Employee Laura McCutcheon. The Employer, self-insured, appeals. Employer contends that the Commission erred by not applying Section 287.020.3, RSMo 1994, as it was amended, effective in 1993, because there was not sufficient competent evidence to support the award, and the award was against the overwhelming weight of the evidence. The parties agree that review of the award should be in accordance with *Davis v. Research Medical Center,* 903 S.W.2d 557, 571 (Mo.App.1995).

Tri–County Group XV, Inc., (Employer) employed Laura McCutcheon (Employee) as an in-home care aide. The Employer operated pursuant to the provisions of the Missouri

Workers' Compensation Act and was qualified as a self-insured employer through the Missouri Rural Services Workers' Compensation Insurance Trust. Employee's primary duty was to help elderly clients to live in their homes. She performed such tasks as cooking, cleaning, shopping, running errands, and bathing and dressing her charges.

On the morning of April 4, 1994, Employee reported to the home of Marie Mayfield in Bollinger County, Missouri. After helping her out of bed, dressing her, helping her with medication, and fixing breakfast, Employee returned to the kitchen to clean the dishes. There was a thunderstorm throughout the morning. At approximately 9:10 a.m. Employee was standing three to four feet from the stove with a cake pan in her hand. The edge of the pan rested on a wooden table covered with a vinyl cloth. While she stood in this position and talked with the client, Employee saw a flash of light come toward the stove. She saw a shower of sparks emanate from the outlet area behind the stove. She testified that she saw the flash of light go toward the outlet, change directions, and then come toward her as sparks.

Employee testified that the sparks directly hit her and she screamed. She felt nauseous. She noted a burning smell and checked to see if the walls were burning. Although the walls were unharmed, she noticed burned hair on the left side of her head by her ear. The nausea increased. She sat down in the living room and called her office to report what had happened. She also called her husband to have him pick her up because she felt she could not drive. She attempted to continue working. After Employee made lunch for her client and put her down for a nap, she then laid herself on the couch to rest. She felt unable to get up or move. She tried to call out to her client but was unable. Employee does not remember anything else until she arrived at the hospital. She was hospitalized for twelve days under the care of a neurologist.

Since her release Employee has suffered from depression as well as physical problems. Her continuing psychological problems resulted in several additional emergency room visits. Personal finances prevent Employee from receiving continuing psychiatric care, but she remains on prescription medication. She has not resumed her normal activity level and relies on her sons to do much of the housework. Some mornings she cannot get out of bed because her legs will not move. She drops things from her left hand and her left leg goes to sleep, causing her to fall. She remains under the care of a physician. There is no indication that Employee had any of these problems prior to the incident.

Witnesses for both parties inspected the electrical wiring of the Mayfield home. Alan Magee testified on behalf of Employer. He has been an electrical engineer for fifteen years and has degrees from the U.S. Military Academy at West Point and Washington University. He attended a course on lightning and its effects on electrical systems at the University of Wisconsin in 1993.

Sean Clifton testified on behalf of Employee. He is a licensed electrician. He has been in business as an electrical contractor for four and one-half years. He attended a trade school for three years where he spent ninety percent of his time in practical training.

Clifton based much of his testimony on the National Electric Code (NEC) of 1993, as printed by the National Fire Protection Association. He testified that the NEC is generally accepted in the electrical industry as minimum standard for electrical work in buildings, and for each respective year the NEC applies only to structures built in that time frame. The Mayfield home was built sometime in the 1940's or 1950's.

Clifton claimed there were three serious violations of the 1993 Code existing in the house. He testified that one violation was because the stove had a three-prong cord connected to the two-prong receptacle in the house by means of an adaptor, or "cheater plug" without proper attachment of the ground wire of the adaptor. Magee testified that even if the 1993 NEC applies, no violation existed because use of a "cheater plug" is not prohibited. However, Magee indicated that he would recommend installation of a three-prong receptacle, making an adaptor unnecessary.

Clifton also testified that the grounding service wire to ground the main electrical system was inadequate. Although Magee agreed that the wire might not meet the requirements of the 1993 NEC, he stated that it may have met the requirements in effect at the time of construction. Clifton believes that had the house been adequately grounded, the voltage would not have struck Employee. He stated Employee was at a greater risk from danger due to lightning than a member of the general public. Conversely, Magee testified that he felt the grounding was adequate and would recommend no changes. He testified that an employee in the Mayfield home was at no greater risk of being struck by lightning than a member of the general public.

Clifton testified that the metal water pipes were not grounded and that there was no bond between the metal piping and the electrical grounding system. He believes that if the pipes had been properly grounded the accident may not have happened. Magee, in contrast, testified that the main grounding was solid and adequate so that grounding of the piping would have had no effect.

Clifton testified that Employee's version of how the events of April 15, 1994, occurred was plausible. Magee testified that it is scientifically implausible for this to have occurred. The witnesses agreed that people working inside houses are at less risk of lightning than those working outdoors. They also agreed that people in houses surrounded by tall trees are at less risk than people in isolated houses because lightning usually strikes the highest available object. The Mayfield home is surrounded by high trees. Neither witness could compare the risk of lightning strikes in the Mayfield home against the risk in other homes in the area, although Clifton testified that the risk would be lower in a home built in accordance with the 1993 NEC.

■ The Administrative Law Judge (ALJ) issued a temporary or partial award on January 30, 1995, finding that Employee suffered an injury arising out of and in the course of

her employment. The ALJ also found Employer responsible for medical expenses and unpaid temporary total disability and ordered that Employer provide for additional medical treatment and temporary total disability. Employer appealed the award to the Labor and Industrial Relations Commission asserting that it is not liable for the payment of any compensation. With a dissent, the Commission issued an award affirming and adopting the ALJ's findings. This appeal followed.[1]

■ Appellant contends through its first point that the Commission erred:

[I]n ruling that the Respondent sustained an accident arising out of her employment on 4–15–94 because the Commission failed to apply the proper rule of law in that the Commission failed to consider this case pursuant to Section 287.020.3 RSMo.Supp. 1993, but instead based its decision upon case law which preexisted, and was obviated by, that statute.

Appellant contends that rather than deciding the matter on the standards set forth in Section 287.020.3, "the Commission decided the case on the basis of two doctrines which have developed over the years in the case law, the 'greater hazards' and 'conditions of employment' tests."

Section 287.020, RSMo Supp.1993, contains various definitions, including several, perhaps redundant, references to "injury", in subsections 2 and 3(1)(2)(3). Appellant's contentions, however, are limited to this portion of subsection 3:

(2) An injury shall be deemed to arise out of and in the course of the employment only if:

(a) It is reasonably apparent, upon consideration of all the circumstances, that the employment is a substantial factor in causing the injury; and

(b) It can be seen to have followed as a natural incident of the work; and

(c) It can be fairly traced to the employment as a proximate cause; and

---

1. As the issues presented are whether the injuries are compensable, an appeal lies from this type of award. *See Eubanks v. Poindexter Mechanical Plumbing & Heating*, 901 S.W.2d 246, 247 (Mo. App.1995).

(d) It does not come from a hazard or risk unrelated to the employment to which workers would have been equally exposed outside of and unrelated to the employment in normal nonemployment life;

Appellant agrees that the injuries occurred in the course of employment, but did not arise out of the employment. Appellant contends that by citing, discussing, and apparently relying upon cases previous to the effective date in 1993 of the present Section 287.020, the Commission failed to follow this statute as it now exists.

The Commission does not specifically refer to the statute or its subdivisions again in the award. However, it is not fatal to the award that it is missing. The Commission begins by noting that "in the course of" employment requires that the employee be in a place where he might reasonably be fulfilling the duties of his employment. Later in the award the Commission stated that Employee's position in the kitchen near the stove directly related to her duties of employment. The Commission then addressed whether it could deem the injury as "arising out of" her employment. Although the analysis addressed the different tests employed by Missouri courts to interpret "arising out of" employment, this does not establish that the Commission disregarded the above-quoted portion of the statute.

Although the Commission does not articulate how each of these circumstances fits within the scope of the subsection of Section 287.020.3(2), it concluded that because Employee's employment mandated working in the kitchen of an old house with inadequate electrical grounding that her employment was a substantial factor in causing her injury; that her injury followed as a natural incident of her work; and, that her injury can be fairly traced to her employment as a proximate cause. It found that her employment in the Mayfield home exposed her to a risk above that of other people in their normal life. Point I is denied.

The Employer, through its second point, contends that the Commission erred "in finding that the Respondent's injury arose out of and in the course of employment because there is not sufficient competent evidence in

the record to warrant the making of the award and the award is against the overwhelming weight of the evidence." Under this point the Employer cites only *Davis v. Research Medical Center*, 903 S.W.2d 557 (Mo.App.1995).

■ One of the contentions the Employer makes is that the Commission rejected the testimony of its expert witness and accepted that of the Employee's, pointing out that the expert witness it offered "is the only witness in this case to have any education specific to lightning and its effect on electrical systems." The Employee's expert trained for three years in a trade school, was a licensed electrician, and had worked as an electrician for four-and-one-half years. Both the Administrative Law Judge and the Commission accepted his testimony over that of the Employer's witness. That determination of credibility was for the Commission. *Davis*, 903 S.W.2d at 571.

■ Turning now to whether there was sufficient evidence to find the injury compensable under Section 287.020.3(2), RSMo Supp.1993, we initially note that in construing the Workers' Compensation Act, all doubts are resolved in favor of the employee. *Fischer v. Archdiocese of St. Louis–Cardinal Ritter Institute*, 793 S.W.2d 195, 198 (Mo. App.1990). We also assume that by the amendments to § 287.020, the legislature intended a change in the Workers' Compensation Law. *Kilbane v. Director of Dept. of Revenue*, 544 S.W.2d 9, 11 (Mo. banc 1976).

The Employer claims that the record does not provide a basis of comparison between the risk of injury due to lightning while Employee worked inside her client's home and the risk to the general public. Although the expert witnesses did not investigate the electrical wiring of surrounding homes in the area, Clifton testified that there would be less risk to people in homes complying with the 1993 NEC than to those in the Mayfield home. The Commission noted that it is difficult to determine what the phrase "general public" includes. The Commission ultimately made that comparison to people located in the "vast majority of other private residences

with adequate grounding of the electrical systems."

The Commission found that Employee's employment mandated that she work in the Mayfield home. Her duties included cooking, washing dishes and performing other work in the kitchen. Performing these duties required that she stand in close proximity to the stove equipped with a cheater plug. Testimony indicated that this circumstance combined with inadequate grounding of the electrical system contributed to the higher risk of suffering an electrical shock during a thunderstorm.

Traditionally, Workers' Compensation matters involving lightning turned on whether the employee was exposed to a greater hazard from danger of lightning than other persons constituting the general public. *See Reich v. A. Reich & Sons Gardens, Inc.*, 485 S.W.2d 133 (Mo.App.1972); *Schmidt v. Adams & Sons Grocer Co.*, 377 S.W.2d 564 (Mo.App.1964). *See also Beecher Wholesale Greenhouse, Inc. v. Industrial Commission*, 170 Ill.App.3d 184, 120 Ill.Dec. 720, 524 N.E.2d 750 (1988) (holding an injury compensable where inadequately grounded telephone system increased the risk of electrical shock from lightning).[2]

Analyzing the evidence under Section 287.020.3(2), it was sufficient to support the award. Under (a) of that section, it is required "that the employment is a substantial factor in causing the injury." Here there was evidence that, had the home been properly grounded, Employee's injuries might not have occurred.

Under (b) of that section, the injury "can be seen to have followed as a natural incident of the work." Although what happened was unusual, being injured by lightning is a natural occurrence which could be more likely to occur in a house with inadequate grounding. The same could be said of (c), as employment in such a house could be the proximate cause, at least under the evidence here.

"Proximate cause" and "direct cause" have been said to be synonymous. *Dale v. Edmonds*, 819 S.W.2d 388, 390 (Mo. App.1991). "Proximate cause is such cause as operates to produce a particular consequence without the intervention of an independent or superseding cause." *Id.* In Workers' Compensation matters, "a cause is proximate if it is a substantial factor in bringing about the result." *Armstrong Tire & Rubber Co. v. Kubli*, 312 N.W.2d 60, 64 (Iowa App.1981).

Under this section, (d) requires that the injury "does not come from a hazard or risk unrelated to the employment to which workers would have been equally exposed outside of and unrelated to the employment at normal nonemployment life." Again, the evidence indicated that the Employee may have been in an area where the risk was higher than the risk presented to other persons. This requirement is similar to that earlier discussed by which the compensability of injuries by lightning turn on whether the employee was exposed to greater hazards than other persons constituting the general public. *Reich*, 485 S.W.2d 133; *Schmidt*, 377 S.W.2d 564; *Beecher*, 524 N.E.2d 750. Here that was shown. Point II is denied.

The award is affirmed.

CROW and PARRISH, JJ., concur.

**2.** Aside from Workers' Compensation, a defense due to an act of nature (often referred to as an "act of God") is only available where it is "an event in nature so extraordinary that the history of climatic variations in the locality affords no reasonable warning of their coming" and is not humanized through the participation of man. *Corrington v. Kalicak*, 319 S.W.2d 888, 892 (Mo. App.1959); *see also* BLACK's LAW DICTIONARY 33 (6th ed. 1990). Lightning, of course, can be anticipated, at least under certain conditions.