Sharon COOK, Appellant,

v.

ST. MARY'S HOSPITAL, Respondent.

No. WD 51897.

Missouri Court of Appeals,
Western District.

Feb. 11, 1997.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 1, 1997.

**936**

William C. Spooner, Kansas City, for appellant.

Bill W. Richerson, Kansas City, for respondent.

Before EDWIN H. SMITH, P.J., and BRECKENRIDGE and ELLIS, JJ.

BRECKENRIDGE, Judge.

Sharon Cook appeals the order of the Labor and Industrial Relations Commission adopting the award of the Administrative Law Judge which denied her claim for workers' compensation benefits because she did not sustain an "injury" as defined by § 287.020.3, RSMo 1994. The Commission erred in its application of § 287.020.3, because Ms. Cook's injury arose "out of" and

"in the course of" her employment. The Commission's decision is reversed and remanded.

When reviewing the disposition of a workers' compensation claim, this court views the evidence, and any reasonable inferences drawn therefrom, in the light most favorable to the Commission's decision. *Davis v. Research Medical Center*, 903 S.W.2d 557, 565 (Mo.App.1995). The decision of the Commission may be modified, reversed, remanded for rehearing or set aside only if the Commission acted without or beyond its power, the decision was procured by fraud, the facts found do not support the award or the decision was not supported by sufficient competent evidence in the record. Section 287.495.1, RSMo 1994; *Abel v. Mike Russell's Standard Service*, 924 S.W.2d 502, 503 (Mo. banc 1996). An appellate court is bound by the Commission's findings of fact, and, when the Commission denies recovery, the court can set aside the Commission's decision only when it acted "without or in excess of its powers." *Abel*, 924 S.W.2d at 503. "Where the facts are not in dispute, the question of whether an accident arose out of and in the course of employment is a matter of law." *Cherry v. Powdered Coatings*, 897 S.W.2d 664, 666 (Mo.App.1995).

The circumstances surrounding Ms. Cook's accident are not disputed. At the time of the incident, Ms. Cook, a certified nurse's aide, was employed by St. Mary's Hospital as a private duty nurse. She helped elderly individuals with daily living tasks in their homes. Ms. Cook's duties included preparing the clients' meals, lifting them to and from their beds, assisting in bathing them and giving them their prescribed medication.

On Friday, April 29, 1994, Ms. Cook was working in the home of George Scarborough. After she prepared Mr. Scarborough's evening meal, she sat with him at his kitchen table while he ate. Suddenly Ms. Cook heard a fluttering sound. She turned to her right and observed a bird flying toward her head. To avoid being struck by the in the face by the bird, Ms. Cook ducked and twisted to her right.

Immediately, she experienced a burning sensation in her right hip and leg. The bird flew over her and hit a window. She was able to open a door and let the dazed bird out. Mr. Scarborough informed her that he believed the wild bird came through the flue of his chimney since he had not opened the door that day and his window was covered by a screen. Ms. Cook finished her duties at Mr. Scarborough's home. By the time she left, the pain in her right hip had spread to her groin area and down the back of her leg. Over the weekend, the pain grew more severe. In her right leg it ran down the back and then up the front of her leg from her foot to her knee. She also experienced tingling in her toes.

On Monday morning, Ms. Cook went to her supervisor's office and filled out an accident report. When she left the office, she sought medical treatment at St. Mary's emergency room, where the doctor diagnosed a hip sprain. Three days later she went back to the emergency room, because "[n]othing was getting better, everything was getting worse." Because of Ms. Cook's continuing complaints, she was referred to Dr. James Stuckmeyer, an orthopedic physician. Dr. Stuckmeyer ordered an MRI, which revealed "a probable disc herniation at the L3–4 level." To relieve her pain, Dr. Stuckmeyer prescribed epidural injections and advised her to take off work and rest. Two weeks later, Ms. Cook returned to Dr. Stuckmeyer because the epidural injections had not alleviated her pain. At this time Dr. Stuckmeyer recommended a lumbar myelogram and, depending on the results, possibly surgery.

Ms. Cook's employer would not approve further testing by Dr. Stuckmeyer, and directed that Ms. Cook see Dr. David Tillema, an orthopedic surgeon. After examining Ms. Cook, Dr. Tillema ordered a myelogram and a follow-up CT scan, which disclosed a mild bulge encroaching on her nerve root sleeves. On the basis of these tests and her description of the incident on April 29, 1994, Dr. Tillema opined that her complaints were not caused by twisting and turning to avoid the bird. Her employer refused to pay for fur-

ther treatment, so Ms. Cook did not visit Dr. Tillema again.

Ms. Cook filed a claim for workers' compensation benefits with the Division of Workers' Compensation. In response, St. Mary's admitted that she was its employee at the time of the incident and that the dispute was subject to the provisions of the workers' compensation law. However, St. Mary's denied Ms. Cook's allegations that she suffered an "injury" that qualified her for temporary disability benefits.

A hearing was held on Ms. Cook's claim before an administrative law judge. By agreement, Ms. Cook's medical records were admitted into evidence. Ms. Cook presented her own testimony and that of Dr. Edward Prostic. Dr. Prostic stated in his deposition testimony that the incident at Mr. Scarborough's house caused her subsequent complaints. He asserted that Ms. Cook sustained injury to her low back with herniation of disc which was caused or contributed to by her bending forward and twisting to avoid the bird. On cross-examination, he conceded that the results of the myleogram and CT scan concluded that Ms. Cook had a bulging disc, not a herniated disc.

St. Mary's evidence consisted of the deposition testimony of Dr. David Tillema. Dr. Tillema testified that Ms. Cook had arthritic changes in her lumbar spine and degenerative spondylolisthesis,[1] which were not caused by the events of April 29, 1994. He also testified that her pre-existing degenerative condition was not aggravated by the motion Ms. Cook made when avoiding the bird. In his opinion, there is less than a fifty percent chance that the incident with the bird was the precipitating or aggravating cause of Ms. Cook's back problems. After hearing the evidence, the ALJ issued written findings of fact and conclusions of law denying Ms. Cook compensation.

In his order, the ALJ accepted Ms. Cook's testimony concerning the events at Mr. Scarborough's home. However, the ALJ found that the incident did not satisfy the "new" definition of injury in the 1993 amendment to § 287.020.3, because Ms. Cook was not ex-

---

1. Spondylolisthesis is a condition where one vertebra has moved forward on another.

posed to a hazard or risk unequal to that which she would have been exposed to in her normal nonemployment life or a hazard or risk related to her employment. The ALJ found that the accident was a "fluke" and there was no causal connection between the conditions of Ms. Cook's work and the resulting injury. Therefore, the ALJ denied Ms. Cook's claim for compensation. Citing the contradictory testimony of Drs. Prostic and Tillema, the ALJ also indicated that he was "not even sure" that avoiding the bird caused Ms. Cook's complaints.

Ms. Cook filed an application for review with the Labor and Industrial Relations Commission, arguing that the ALJ erred in denying her compensation because she suffered an injury within the meaning of § 287.020.3. On October 4, 1995, the Commission adopted the ALJ's award and denied Ms. Cook compensation, with one member dissenting. Ms. Cook filed a timely notice of appeal in this court.

As her sole point on appeal, Ms. Cook alleges that the Commission erred in denying her workers' compensation benefits because she suffered an injury within the definition of § 287.020.3. Ms. Cook claims that her employment was a substantial factor in causing her injuries. She also argues that the bird's actions exposed her to a risk she would not have been exposed to in normal nonemployment life, thereby entitling her to benefits.

For workers' compensation purposes, "injury" is defined in the 1993 version of § 287.020.3. The text of the relevant provisions of § 287.020.3 reads:

(1) In this chapter the term **"injury"** is hereby defined to be an injury which has arisen out of and in the course of employment. The injury must be incidental to and not independent of the relation of employer and employee. Ordinary, gradual deterioration or progressive degeneration of the body caused by aging shall not be compensable, except where the deterioration or degeneration follows an incident of employment.

(2) An injury shall be deemed to arise out of and in the course of the employment only if:

(a) It is reasonably apparent, upon consideration of all the circumstances, that the employment is a substantial factor in causing the injury; and

(b) It can be seen to have followed as a natural incident of the work; and

(c) It can be fairly traced to the employment as a proximate cause; and

(d) It does not come from a hazard or risk unrelated to the employment to which workers would have been equally exposed outside of and unrelated to the employment in normal nonemployment life[.]

When construing a statute, this court must give the language its plain and ordinary meaning to ascertain the intent of the legislature. *Wollard v. City of Kansas City*, 831 S.W.2d 200, 203 (Mo. banc 1992). Any doubts concerning the meaning of the Workers' Compensation Act are resolved in favor of the employee. *Johnson v. City of Kirksville*, 855 S.W.2d 396, 398 (Mo.App.1993).

When the issue is whether an injury arises out of and in the course of employment, the matter is decided upon a case-by-case basis. *Hilton v. Pizza Hut*, 892 S.W.2d 625, 631 (Mo.App.1994). "Each case must turn upon the point of whether, under its particular circumstances, the injury arose from something which had become an incident to the employment." *Id.*

The Southern District of this court applied § 287.020.3 to determine whether an injury arose out of and in the course of employment in *McCutcheon v. Tri–County Group XV, Inc.*, 920 S.W.2d 627 (Mo.App.1996), a factually similar case. In *McCutcheon*, an in-home care aide sought workers' compensation benefits after she was struck by lightning while working in one of her patient's homes. *Id.* at 629. The Commission entered an award in her favor, and her employer appealed, claiming that Ms. McCutcheon had not suffered an injury under § 287.020.3. *Id.* at 630. After analyzing the statute, the court held that Ms. McCutcheon suffered an injury for purposes of workers' compensation. *Id.* at 631.

In its opinion, the *McCutcheon* court examined each subsection of the statute to determine whether Ms. McCutcheon suffered

an "injury" when she was struck by lightning. First, the court found that the employment was a substantial factor in causing the injury because there was evidence that the home's faulty wiring increased the threat of being struck by lightning. *Id.* at 632. Following the same reasoning, the court found that the employment was a proximate cause of the injury and that the injury followed as a natural incident of the work. *Id.* Finally, the court ruled that Ms. McCutcheon was exposed to a greater risk in the patient's home because the home's faulty wiring created an increased risk of being struck by lightning. *Id.*

Here, this court must also apply the test of § 287.020.3 to the circumstances of Ms. Cook's accident to determine whether she suffered an "injury." The first provision, found in § 287.020.3(1), provides that an injury must have "arisen out of and in the course of employment." The required elements for an injury to arise out of and in the course of employment are delineated in subsection (2) of § 287.020.3.

■ Under subparagraph (a) of subsection (2), the employment must be a "substantial factor in causing the injury." Similarly, subparagraph (c) requires that the injury "be fairly traced to the employment as a proximate cause." "Proximate cause is such cause as operates to produce a particular consequence without the intervention of an independent or superseding cause." *McCutcheon,* 920 S.W.2d at 632 (quoting *Dale v. Edmonds,* 819 S.W.2d 388, 390 (Mo.App. 1991)). In workers' compensation cases, "a cause is proximate if it is a substantial factor in bringing about the result." *McCutcheon,* 920 S.W.2d at 632 (quoting *Armstrong Tire & Rubber Co. v. Kubli,* 312 N.W.2d 60; 64 (Iowa App.1981)). To satisfy subparagraphs (a) and (c) of subsection (2), there has to be a sufficient causal connection between the conditions under which the work is performed and the resulting injury.

■ Here, Ms. Cook was present in Mr. Scarborough's home to perform her assigned tasks as a private duty nurse. One of her responsibilities was preparing meals for Mr. Scarborough. To perform that duty, Ms. Cook was required to be in the kitchen. The fact that Ms. Cook had completed preparation of the meal and was seated at the table while Mr. Scarborough ate his dinner does not preclude her claim, because her activity was "beneficial and incidental to [her] employment." *See James v. CPI Corp.,* 897 S.W.2d 92, 95 (Mo.App.1995). Ms. Cook was at risk to be attacked by the wild bird only because she was performing the duties of her employment in Mr. Scarborough's home at a time that a condition of his home permitted entry by a wild bird.

■ It is "part of the common knowledge of every person of ordinary understanding and intelligence" that a residential dwelling is constructed to obstruct the access of wild creatures to the dwelling's interior.[2] Only when there is a condition out of the norm will a wild bird gain entry into a house. It is not necessary that the circumstance permitting entry be a defect, but only that it be a condition of the premises of the employment which creates a greater risk that a wild bird could gain access. In this case, the Commission made the reasonable inference that the condition of Mr. Scarborough's home which permitted a wild bird to enter the interior was the flue of his chimney. From common knowledge, a creature could gain entry through a flue only if the damper was defective or left open.

These undisputed facts prove a causal connection between the conditions in which Ms. Cook was required to perform her duties, i.e., the condition of Mr. Scarborough's home where she was required to work, and the incident which she claimed resulted in injury. *See McCutcheon,* 920 S.W.2d at 632. Ms. Cook was exposed to the alleged injury because the performance of her duties required her to be in the kitchen of Mr. Scarborough's home, and a condition of Mr. Scarborough's home permitted entry by a wild bird. Therefore, as a matter of law, Ms. Cook's employment was a substantial factor and a proximate cause of her alleged injury.

---

**2.** When a matter is "part of the common knowledge of every person of ordinary understanding and intelligence," it is "proper to assume the existence of the fact without proof." *English v. Old American Insurance Company,* 426 S.W.2d 33, 40 (Mo.1968).

■ Pursuant to subsection (2)(b), the injury must "be seen to have followed as a natural incident of the work." Since Ms. Cook's work required her to perform her duties under conditions that placed her at risk for attack by a bird, her claimed injury followed as a natural incident of the work.

■ Finally, subsection (2)(d) directs that the injury must not "come from a hazard or risk unrelated to the employment to which workers would have been equally exposed outside of and unrelated to the employment at normal nonemployment life." Here, Ms. Cook was exposed to the risk of the claimed injury from a defect or condition of Mr. Scarborough's house because her employment required her presence in his home. Therefore, the hazard or risk was related to her employment.

In addition, Ms. Cook's claimed injury was not caused by a risk to which she was equally exposed in normal nonemployment life. It was the defect or condition of Mr. Scarborough's house which permitted a wild bird to enter and placed her at greater risk of attack. *See McCutcheon,* 920 S.W.2d at 632. This defect or condition is not one to which workers are equally exposed in normal nonemployment life; it was specific to Mr. Scarborough's home.

Ms. Cook was required to perform her employment duties in a house with a condition or defect which created a greater risk of entry by a wild bird, and there was a causal connection between this condition of her work and any injury resulting from twisting and ducking to avoid the bird. The Commission misapplied the plain and ordinary language of § 287.020.3, and acted without or in excess of its power in finding that any injury Ms. Cook suffered as a result of the incident with the bird was not an "injury" under § 287.020.3.

■ The circumstances of Ms. Cook's accident would qualify for compensation if the incident with the bird caused Ms. Cook's back problems. As a claimant, her burden of proof is as follows:

> The claimant has the burden of proving all the essential elements of the claim and must establish a causal connection between the accident and the injury. The claimant does not, however, have to establish the elements of [the claimant's] case on the basis of absolute certainty. It is sufficient if [the claimant] shows them by a reasonable probability. "Probable means founded on reason and experience which inclines the mind to believe but leaves room for doubt." In a workers' compensation proceeding, all doubts should be resolved in favor of the employee and in favor of coverage, but a claim will not be validated where some essential element is lacking.

*White v. Henderson Implement Co.,* 879 S.W.2d 575, 577 (Mo.App.1994) (citations omitted).

There was a conflict in the evidence as to whether Ms. Cook's bending and twisting to avoid the bird caused or aggravated the condition of her back and spine. Ms. Cook's expert testified that it did; St. Mary's expert opined that it did not.

Unfortunately, the ruling of the ALJ, as adopted by the Commission, did not resolve this issue. The ALJ stated in his findings of fact and conclusions of law that he was "not even sure the Claimant proved that her present complaints were caused by ducking to avoid the bird on April 29, 1994." This statement regarding the conflicting evidence on causation is not a definitive resolution of the issue. *Searcy v. McDonnell Douglas Aircraft Co.,* 894 S.W.2d 173, 178 (Mo.App.1995). Nor did the ALJ rely on a lack of causation as his basis for denying Ms. Cook's claim. Instead, he determined that her employment was not a substantial factor in causing her injury and that she was equally exposed to a risk of attack by a wild bird in her normal nonemployment life. Because the question of whether Ms. Cook's back problems were caused or aggravated by the incident with the bird is unresolved, the award must be reversed and remanded for adjudication of this issue.

The award is reversed and remanded to the Commission for proceedings consistent with this opinion.

All concur.