Lawrence GARDNER, Claimant–
Respondent,

v.

CONTRACT FREIGHTERS, INC.,
Employer–Appellant.

No. 26760.

Missouri Court of Appeals,
Southern District,
Division Two.

June 27, 2005.

Ronald G. Sparlin, Joplin, for appellant.

Jon K. Lowe, Kansas City, for respondent.

KENNETH W. SHRUM, Judge.

Lawrence D. Gardner ("Claimant") was awarded workers' compensation benefits after suffering a heart attack. His employer ("CFI") urges reversal on three grounds.[1] Its first argument for reversal alleges there was insufficient, substantial evidence to support any award favorable to Claimant. Because we find merit in CFI's first allegation, we need not address its other claims. We reverse the award favorable to Claimant and remand the case with directions that Commission enter an award denying benefits.

## FACTS

In 1999, when Claimant was approximately 45 years old, he began working for CFI as an "over-the-road" truck driver. Ordinarily, he pulled 53–foot vans and his only duty was to drive the truck. Once or twice each year, he had to secure his load by nailing boards beside pallets to keep the pallets from sliding on the wooden floor of the trailer.

On April 13, 2001, Claimant drove from Phoenix, Arizona, to El Paso, Texas, to pick up a load of coiled wire. He spent the night in El Paso. After sleeping there, he drove to the customer's business to pick up his load at approximately 8:00 a.m. (April 14). Once the pallets (which contained 2500 pound coils of wire) were loaded, Claimant "blocked" the load, i.e., used a "claw hammer" and long nails to fasten two-by-fours to the trailer floor to secure the pallets. This was not Claimant's "normal work." Moreover, "[i]t was hot that morning," approximately "eighty degrees." The sun was shining, Claimant was working in the trailer, and there was no air flow. Claimant worked for an hour and a half to two hours, during which time he became "dizzy" and began having "pretty intense" pains, like a "muscle ache." This pain ran across his shoulders and into his chest and shoulders.

Believing he had the flu, Claimant went back to CFI's terminal to rest and recuperate. During the remainder of April 14, Claimant's symptoms continued. By the next morning, however, Claimant felt better and left El Paso with his load at approximately 8:30 to 9:00 a.m.

Unfortunately, Defendant's symptoms soon returned; accordingly, he sought emergency treatment at a hospital in Van Horn, Texas, at approximately 10:10 a.m. Once there, he was diagnosed with a myocardial infarction. He was then transferred to an El Paso hospital where the heart attack diagnosis was confirmed via heart catherization and other procedures. The heart surgeon found Claimant had sustained a myocardial infarction and that his "right coronary artery was 100% occluded at its mid portion with some collateral filling from the left." Claimant was treated with angioplasty and stent installation.

The record shows that before his heart attack, Claimant did not exercise, he was overweight (260 to 265 pounds for several years), he had high blood pressure history, and he had been a pack-a-day smoker since age eighteen. Other evidence before the Administrative Law Judge ("ALJ") and Commission included medical records from treating hospitals, treating physicians and clinics, deposition testimony of Allen J. Parmet, M.D. (Claimant's expert), and written reports of Doctors Lash and Estep (CFI's experts).

Dr. Parmet testified that Claimant had "risk factors" for heart disease, such as

---

1. The term "CFI" is an abbreviation for Contract Freighters, Inc. Also, "Commission," as used in this opinion, refers to the "Labor and Industrial Relations Commission of Missouri."

"being a male and a smoker with mild, but controlled hypertension and a non-exerciser." Dr. Parmet stated that those factors "undoubtedly created the initial coronary artery plaque formation in the right coronary artery." He further testified Claimant's heavy exertion on April 14, 2001, i.e., nailing the two-by-fours to the trailer floor, temperature conditions, dehydration of Claimant, and inadequate oxygenation of his blood (due to the high altitude at El Paso) were "significant precipitating factor[s], the last straw so to speak that ... finally occlude[d] the artery that was clearly already partially blocked due to the other factors he had in his background."

When asked what he meant by the phrase "last precipitating factor," Dr. Parmet answered that he believed Claimant's final arterial occlusion occurred because a clot formed, either because his blood vessel "spasm[ed] or because the blood suddenly [became] thicker and start[ed] to cling to the surface." Later, during cross-examination, the following occurred:

Q. [to Dr. Parmet] Would you agree that [Claimant's] underlying coronary disease was *the substantial factor* in his myocardial infarction?

A. *Yes.*

Q. And I think as you said earlier you feel the event on April 14, and 15 precipitated the myocardial infarction?

"A. That's correct." (Emphasis supplied.)

CFI put in evidence reports written by their own medical experts, Drs. Estep and Lash. Dr. Estep unequivocally concluded that there was no relationship between the infarction and Claimant's employment. He opined that Claimant's work activities were not a substantial factor nor a triggering event for the heart attack. Dr. Lash's report agreed with that opinion, concluding that the work activity was not a cause of the infarction nor was it a precipitating factor.

After reviewing the evidence presented, the ALJ entered an award favorable to CFI. Commission reversed the ALJ, noting that "Dr. Parmet testified that [Claimant's] work [on April 14] was the *significant precipitating factor* of the infarct. The infarct was clearly job related." (Emphasis supplied.) This appeal followed.

## STANDARD OF REVIEW

Section 287.495.1 contains the applicable standard of review.[2] *Abel v. Mike Russell's Standard Serv.*, 924 S.W.2d 502, 503 (Mo.banc 1996). Two of the four grounds listed in that case are pertinent here:

"1. The court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:

. . . .

(3) That the facts found by the commission do not support the award;

(4) That there was not sufficient competent evidence in the record to warrant the making of the award."

§ 287.495.1.

In reviewing a Commission award, this court "must examine the whole record to determine if it contains sufficient competent and substantial evidence to support the award, i.e., whether the award is contrary to the overwhelming weight of the evidence." *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 222–23[1] (Mo. banc 2003). "Whether the award is supported by competent and substantial evidence is judged by examining the evidence in the context of the whole record." *Id.* at

2. All statutory references are to RSMo (2000), unless otherwise indicated.

223[2]. We are bound by Commission's findings of fact. *Abel*, 924 S.W.2d at 503.

## DISCUSSION AND DECISION

■ In its first argument, CFI claims that Commission erred in making its award because the "competent, substantial, and credible evidence in the record, particularly the opinions of [CFI's] medical experts, established that [Claimant's] work activities for [CFI] were not a *substantial factor* in causing his myocardial infarction and, therefore, his myocardial infarction did not arise out of and in the course of his employment." (Emphasis supplied.)

■ CFI's claim of Commission error is grounded on language found in sections 287.020 and 287.120.1 of the Workers' Compensation Act. Under the latter provision, employers are "liable, irrespective of negligence, to furnish workers' compensation to employees for personal injuries from accidents 'arising out of and in the course of' employment." *Kasl v. Bristol Care, Inc.*, 984 S.W.2d 852, 853 (Mo.banc 1999). To recover under that section, the employee has the burden of proving, by a preponderance of the evidence, that his or her injury arose out of and in the course of employment. *Jemison v. Superior Auto Mall*, 932 S.W.2d 431, 434[3] (Mo.App. 1996).

Regarding section 287.020, it was amended in 1993 in several respects. Among other things, the legislature established statutory tests for deciding if an injury had arisen out of and in the course of employment in order to justify an award of workers' compensation benefits. This language is found in section 287.020.3(2) as follows:

"2. An injury shall be deemed to arise out of and in the course of the employment only if:

(a) It is reasonably apparent, upon consideration of all the circumstances, that the employment is a *substantial factor* in causing the injury; and

(b) It can be seen to have followed as a natural incident of work; and

(c) It can be fairly traced to the employment as a proximate cause; and

(d) It does not come from a hazard or risk unrelated to the employment to which workers would have been equally exposed outside of and unrelated to the employment in normal nonemployment life."

(Emphasis supplied.)

Additionally, the 1993 version of section 287.020 focuses on whether there is a compensable injury as opposed to whether an accident occurred. *DeVille v. Hiland Dairy Co.*, 157 S.W.3d 284, 286–87 (Mo. App.2005). In doing so, section 287.020.2 provides that "an injury is compensable if it is clearly work related" and "[a]n injury is clearly work related if work was a *substantial factor* in the cause of the resulting medical condition or disability." (Emphasis supplied.) Although the phrase "substantial factor" is largely undefined, section 287.020.2 provides some guidance via this language: "An injury is not compensable merely because work was a *triggering or precipitating* factor." (Emphasis supplied.)

The impact of the section 287.020 changes was explained in *Kasl*, as follows:

"The 1993 amendment further requires that work must be a 'substantial' factor, not merely a 'triggering or precipitating' factor in causing the resulting medical condition or disability. The 1993 amendment thus overrules the holding of *Wynn v. Navajo Freight Lines, Inc.*, [as follows]:

'Even though [employee] was in poor health, had a preexisting heart condition, did not take good care of

himself, and might have succumbed to a fatal heart attack while off work, possibly caused by different sorts of stress, the right to compensation should exist if the actual *triggering* causes are found, on the basis of substantial evidence, to meet the "job related" or "work related" test of *Wolfgeher.'*

654 S.W.2d 87, 89–90 (Mo.banc 1983) (emphasis supplied). The 1993 amendment also rejects statements in earlier cases, such as *Bone v. Daniel Hamm Drayage Company*: 'The heavy work [employee] did while he had his heart and lung conditions was a *precipitating* cause of his death.' 449 S.W.2d 169, 172 (Mo.1970) (emphasis supplied); *see also Wilhite v. Hurd,* 411 S.W.2d 72, 79 (Mo. 1967); *Hall v. Spot Martin, Inc.,* 304 S.W.2d 844, 852 (Mo.1957). Similar statements in the cases listed in the appendix should not be ·followed, for claims governed by ·the 1993 amendment."

984 S.W.2d at 853.

Here, CFI acknowledges that satisfying the substantial factor element of section 287.020 does not require proof that the employment was the sole or primary cause of the alleged compensable injury; that showing the work activity was a substantial factor in causing the injury is sufficient. *Cahall v. Cahall,* 963 S.W.2d 368, 372 (Mo.App.1998); *Cook v. St. Mary's Hospital,* 939 S.W.2d 934, 939 (Mo.App. 1997). CFI also concedes that a work related accident or incident can be both a triggering factor and a substantial factor within the meaning of section 287.020. *Cahall,* 963 S.W.2d at 372.

CFI does point out, however, that Dr. Parmet's deposition testimony and written report were very clear in identifying Claimant's work activity at CFI as being a "precipitating factor" or "triggering fac-

tor." Moreover, when Dr. Parmet was asked what he meant by the phrase "precipitating factor," his answer, even when liberally read, did not provide proof that Claimant's April 14 work activity was a "substantial factor" in causing his myocardial infarction.

■ In so stating, we do not ignore Dr. Parmet's testimony that the "heavy exertion, the dehydration and hypoxia [sic] that [Claimant] encountered" on April 14, 2001, would be a *"significant* precipitating factor, the *last straw* so to speak that caused him to finally occlude the artery." (Emphasis supplied.) As a general rule, "[t]he words a medical expert uses when testifying are … important, not so much in and of themselves, but as a reflection of what impression such witness wishes to impart." *Mayfield v. Brown Shoe Co.,* 941 S.W.2d 31, 36 (Mo.App.1997). Arguably, the "significant precipitating factor" testimony and the "last straw" comment, standing alone, might be read as reflecting that Dr. Parmet wanted to impart the notion that Claimant's April 14 work activities were a "substantial factor" in causing his heart attack, and thus provide evidence supportive of Commission's ruling.

We reject that hypothesis, however, for the reason that Dr. Parmet's "significant precipitating factor" testimony and the "last straw" comment did not stand alone. During cross-examination, he recognized there was a difference between a "triggering or precipitating" factor that might cause a medical condition or disability and work that was a "substantial factor" in causing injury. He did this when he agreed that (1) Claimant's "underlying coronary disease was the *substantial factor* in his myocardial infarction," and (2) that Claimant's work activity on April 14 and 15 *"precipitated* the myocardial infarction." (Emphasis supplied.)

We conclude from a review of the whole record that Commission's finding

that Claimant's April 14–15 work related incidents were substantial factors in causing his myocardial infarction was not supported by competent and substantial evidence and were contrary to the overwhelming weight of the evidence. Accordingly, we reverse Commission's award of benefits and remand with directions that Commission enter an award denying benefits to Claimant.

PARRISH, P.J., and BARNEY, J., concur.